UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Goss International Americas, Inc.,
 Plaintiff

 v.

MAN Roland Inc. and
MAN Roland Druckmaschinen AG,
 Defendants

Civil No. 03-cv-513-SM
Opinion No. 2005 DNH 150

MAN Roland Inc. and
MAN Roland Druckmaschinen AG,
 Counterclaim Plaintiffs

 v.

Goss International Americas, Inc. and
Heidelberger Druckmaschinen AG,
 Counterclaim Defendants

**O R D E R**

Goss International Americas, Inc. ("Goss") asserts three claims of patent infringement against MAN Roland Inc. and MAN Roland Druckmaschinen AG (collectively, "MAN Roland").[1] In response, MAN Roland asserts eleven counterclaims against Goss and Heidelberger Druckmaschinen AG ("Heidelberger AG"). Before

---

[1] Specifically, Goss alleges infringement of United States Patent Nos. 6,374,734 (the '734 patent), 6,386,100 (the '100 patent), and 6,739,251 (the '251 patent).

the court is Heidelberger AG's motion to dismiss MAN Roland's fifth and sixth counterclaims (which allege violations of section 2 of the Sherman Antitrust Act and section 7 of the Clayton Antitrust Act) for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  MAN Roland objects.  For the reasons given, the motion is granted in part and denied in part.

**Standard of Review**

When ruling on a motion to dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the [counterclaim] plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory."  Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002) (citing TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., 215 F.3d 172, 175 (1st Cir. 2000)).  Dismissal is appropriate "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory."  Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000) (quoting Correa-Martinez v.

Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). Notwithstanding this deferential standard of review, the court need not accept as true bald assertions or conclusions of law. Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) (citations omitted).

**Background**

Goss and MAN Roland manufacture, market, distribute, and sell web offset printing presses. Until August 2004, Goss was known as Heidelberg Web Systems, Inc. ("HWS") and was a wholly owned subsidiary of Heidelberger AG. In August 2004, Heidelberger AG sold HWS to Goss International Corporation ("Goss Corp."), which gave the company its new name: Goss International Americas, Inc.

In 2002, the United States Patent and Trademark Office ("Patent Office") issued two patents claiming printing presses to Heidelberger AG: the '734 and '100 patents. Heidelberger AG subsequently assigned the '734 and '100 patents to HWS. In

November 2003, HWS filed a complaint asserting infringement of the '734 and '100 patents against MAN Roland.[2]

In May 2004, the Patent Office issued a third patent claiming a printing press to Heidelberger AG: the '251 patent. As part of the August 2004 transaction in which Heidelberger AG sold HWS to Goss Corp., Goss was assigned the '734, '100, and '251 patents. In December 2004, Goss filed a supplemental complaint, asserting infringement of all three patents against MAN Roland.

In January 2005, MAN Roland answered Goss's supplemental complaint and asserted eleven counterclaims against HWS (now Goss) and Heidelberger AG. MAN Roland's fifth and sixth counterclaims assert that Goss and Heidelberger AG violated section 2 of the Sherman Antitrust Act (fifth counterclaim) and section 7 of the Clayton Antitrust Act (sixth counterclaim).

---

[2] By order dated April 4, 2005 (see document no. 30), the caption of this case was amended to list Goss as the plaintiff, to reflect the corporate name change resulting from the August 2004 transaction.

**Discussion**

I.   MAN Roland's Fifth Counterclaim

MAN Roland's fifth counterclaim asserts that counterclaim defendants violated section 2 of the Sherman Antitrust Act by engaging in anticompetitive conduct for the purposes of monopolization and attempted monopolization.  In particular, MAN Roland asserts a <u>Walker Process</u> claim and a sham litigation claim.[3]

In its motion to dismiss, Heidelberger AG argues that it lacks the monopoly power or the dangerous probability of achieving such power necessary to violate section 2, since it exited the relevant market when it sold HWS.  In response, MAN Roland argues that Heidelberger AG's current lack of market power is not dispositive because Heidelberger AG violated section 2 prior to exiting the market by fraudulently procuring the '734,

---

[3] In its reply to MAN Roland's objection to the motion to dismiss, Heidelberger AG incorrectly argues that MAN Roland's fifth counterclaim is premised on the August 2004 transaction. MAN Roland broadly characterizes Heidelberger AG's anticompetitive conduct as "committing fraud on the [Patent Office] in order to secure the patent-in-suit and then bringing baseless lawsuit—sham litigation—in order to enforce those patents which they know to be unenforceable."  (Corrected Countercl. Pl.'s Mem. in Opp'n to Mot. to Dismiss at 5.)

'100, and '251 patents and bringing sham litigation to enforce them.  Heidelberger AG and MAN Roland are both correct.  (In its reply, Heidelberger AG argues that it is also entitled to dismissal because the underlying patent infringement action was initiated by HWS, the assignee of the patent and a separate corporate entity.  While that argument may prove meritorious, it is inappropriate to dismiss a claim based on an argument first raised in a reply to an objection to a motion to dismiss, particularly an undeveloped and unsupported argument.)

    Section 2 of the Sherman Antitrust Act makes it unlawful for any person to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2.  See also 15 U.S.C. § 15(a) (granting a private right of action to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws").  A successful monopolization claim under section 2 requires actual monopoly power and a wrongful act designed to enhance that power.  Town of Norwood v. N.E. Power Co., 202 F.3d 408, 420–21 (1st Cir. 2000) (citing Otter Tail Power Co. v. United States, 410 U.S. 366, 377 (1973); United

States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966)).  A successful attempted monopolization claim under section 2 requires anticompetitive conduct, a specific intent to monopolize, and a dangerous probability of success.  Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 454-56 (1993).

    Walker Process claims form a subset of section 2 claims in which the allegedly anticompetitive conduct is the enforcement of a fraudulently procured patent.  Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 177 (1965).  Sham litigation claims form another subset of section 2 claims in which the allegedly anticompetitive conduct is the enforcement of a patent through litigation, with knowledge the patent is invalid or not infringed.  C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1368 (Fed. Cir. 1998).

    An indispensable element of any section 2 claim is possession of monopoly power or a dangerous probability of obtaining monopoly power.  Possession of monopoly power and the dangerous probability of obtaining monopoly power are both determined at the time of the allegedly wrongful conduct.

Fineman v. Armstrong World Indus., Inc., 774 F. Supp. 225, 260 n.28 (D.N.J. 1991) ("The relevant time period on the question of monopoly power . . . is the time at which [the defendant] allegedly acted."); Am. Hosp. Supply Corp. v. Roy Lapidus, Inc., 493 F. Supp. 1076, 1077 (D. Mass. 1980) (citations omitted) (dismissing a section 2 claim in part because of a failure to allege defendant's possession of "monopoly power in the relevant market at the time of the acts complained of"); United States v. Am. Airlines, Inc., 743 F.2d 1114, 1118 (5th Cir. 1984) (citing Multiflex, Inc. v. Samuel Moore & Co., 709 F.2d 980, 992 (5th Cir. 1983)) ("When evaluating the element of dangerous probability of success, we do not rely on hindsight but examine the probability of success at the time the acts occur"); Conceptual Eng'g Assocs., Inc. v. Aelectronic Bonding, Inc., 714 F. Supp. 1262, 1270 (D.R.I. 1989) (citations omitted) ("the 'dangerous probability' of successful monopolization must be determined as of the time the acts occurred").

The principal wrongful conduct in both Walker Process and sham litigation claims is an unjustified effort to enforce a patent. Here, MAN Roland bases its counterclaim on the effort to

enforce three different patents.  All agree that by the time Goss asserted the '251 patent, Heidelberger AG had sold HWS to Goss Corp. and had assigned the '251 patent to Goss.  Because, on the facts alleged, there is no legal theory under which Goss's share of the market can be attributed to Heidelberger AG, Heidelberger AG is entitled to dismissal of MAN Roland's fifth counterclaim as it relates to the '251 patent, on grounds that an entity with no market share cannot be liable on a claim of monopolization or attempted monopolization.  See Colo. Interstate Gas Co. v. Natural Gas Pipeline Co., 885 F.2d 683, 694 n.18 (10th Cir. 1989) (citing 2 E. KINTNER, FEDERAL ANTITRUST LAW § 12.6 (1980); 3 P. AREEDA & D. TURNER, ANTITRUST LAW ¶ 803 (1978)) ("While the Supreme Court has refused to specify a minimum market share necessary to indicate a defendant has monopoly power, lower courts generally require a minimum market share of between 70% and 80%."); Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 570 (2d Cir. 1990) (citing Nifty Foods Corp. v. Great Atl. & Pac. Tea Co., 614 F.2d 832, 841 (2d Cir. 1980)) ("A threshold showing for a successful attempted monopolization claim is sufficient market share by the defendant . . . [and] a 33% market share does not

even approach the level required for dangerous probability of success.").

However, Heidelberger AG's 2004 sale of HWS to Goss Corp. provides no basis for dismissing the counterclaim as it relates to the '734 and '100 patents.  Assuming that HWS's share in the market is attributable to Heidelberger AG, Heidelberger AG did hold a market share at the time of the allegedly anticompetitive conduct, that is, HWS's attempt to enforce the '734 and '100 patents.  Thus, Heidelberger AG's sale of HWS to Goss Corp. does not entitle it to dismissal of MAN Roland's fifth counterclaim as it relates to the '734 and '100 patents.

II.  MAN Roland's Sixth Counterclaim

MAN Roland's sixth counterclaim asserts that counterclaim defendants violated section 7 of the Clayton Antitrust Act by participating in the August 2004 transaction.  In its motion to dismiss, Heidelberger AG argues that in August of 2004 it was the selling party, to which section 7 does not apply.  MAN Roland counters that claims seeking relief by divestiture or rescission are appropriate against sellers.  Heidelberger AG replies that

divestiture or rescission claims may allow the courts to exercise jurisdiction over a seller, but do not allow a section 7 claim to be asserted against a seller.  Heidelberger AG is correct.

Section 7 of the Clayton Antitrust Act makes it unlawful for any person "engaged in commerce or in any activity affecting commerce [to] . . . <u>acquire</u> the whole or any part of the assets of another person engaged also in commerce . . . where . . . the effect of such <u>acquisition</u> may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18 (emphasis added).  <u>See also</u> 15 U.S.C. § 15(a) (granting a private right of action to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws").  Section 7 focuses on unlawful acquisition, holding entities acquiring assets, but not those relinquishing assets, in violation. <u>Dailey v. Quality Sch. Plan, Inc.</u>, 380 F.2d 484, 488 (5th Cir. 1967); <u>United States v. Coca-Cola Bottling Co.</u>, 575 F.2d 222, 227 (9th Cir. 1978) (citations omitted).

In certain instances, courts may maintain jurisdiction over entities relinquishing assets to allow for the equitable remedy of rescission. Coca-Cola, 575 F.2d at 229 (citations omitted). Even in those instances, however, the relinquishing entities are not violators of section 7. Id. at 230. In any event, rescission is not a remedy at issue in this case because MAN Roland "has failed to join the buyer of the assets, [Goss Corp.], as a party in the action." Arbitron Co. v. Tropicana Prod. Sales, Inc., No. 91 Civ. 3699 (PKL), 1993 WL 138965, *7 (S.D.N.Y. Apr. 28, 1993).

In August 2004, Heidelberger AG sold HWS, and MAN Roland does not allege that Heidelberger AG acquired any assets. Because MAN Roland has alleged no conduct by Heidelberger AG that violates section 7, Heidelberger AG is entitled to dismissal of MAN Roland's sixth counterclaim.

### Conclusion

For the foregoing reasons, MAN Roland's fifth counterclaim states a viable cause of action against Heidelberger AG only with respect to the '734 and '100 patents; its sixth counterclaim

fails to state a viable cause of action against Heidelberger AG. The fifth counterclaim is dismissed as it relates to the '251 patent, but otherwise remains. The sixth counterclaim is dismissed. Accordingly, Heidelberger AG's motion to dismiss (document no. 51) is granted in part and denied in part.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

November 8, 2005

cc:  Daniel E. Will, Esq.
     Hugh T. Lee, Esq.
     Richard S. Gresalfi, Esq.
     Georg C. Reitboeck, Esq.
     Mark A. Hannemann, Esq.
     Michael J. Lennon, Esq.
     T. Cy Walker, Esq.
     Irvin D. Gordon, Esq.
     Martin B. Pavane, Esq.
     Michael J. Songer, Esq.
     Shari R. Lahlou, Esq.
     Sidney R. Bresnick, Esq.
     Richard D. Margiano, Esq.
     John F. Sweeney, Esq.
     Steven F. Meyer, Esq.
     Tony V. Pezzano, Esq.
     Bruce W. Felmly, Esq.
     Seth J. Atlas, Esq.
     Anthony S. Augeri, Esq.