UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Goss International Americas, Inc.,
     Plaintiff

     v.

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Defendants

                                      Civil No. 03-cv-513-SM
                                      Opinion No. 2006 DNH 050

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Counterclaim Plaintiffs

     v.

Goss International Americas, Inc.
and Heidelberger Druckmaschinen AG,
     Counterclaim Defendants


**O R D E R**

Both plaintiff, Goss International Americas, Inc. ("Goss") and defendants, Man Roland, Inc. and Man Roland Druckmaschinen, AG (collectively "Man Roland") move for an order construing the claims of U.S. Patent Nos. 6,374,734, 6,386,100, and 6,739,251 ("the patents-in-suit"). (See document nos. 142 and 189.) Neither side requested a Markman hearing and, as the claims in question may be construed by reference to the intrinsic record, a hearing appears unnecessary.

The three patents-in-suit relate to an offset lithographic printing press, and, "[i]n particular . . . to gapless tubular printing blankets."  '734 patent, col. 1, ll. 26-28.  In an offset lithographic printing press, a continuous sheet of paper, or web, is printed in the following way:

> The plate cylinder carries a printing plate having a rigid surface defining an image to be printed.  The blanket cylinder carries a printing blanket having a flexible surface which contacts the printing plate at a nip between the plate cylinder and the blanket cylinder.  A web or sheet [of] material to be printed moves through a nip between the blanket cylinder and the impression cylinder.  Ink is applied to the surface of the printing plate on the plate cylinder.  An inked image is picked up by the printing blanket at the nip between the blanket cylinder and the plate cylinder, and is transferred from the printing blanket to the web or sheet at the nip between the blanket cylinder and the impression cylinder.  The impression cylinder can be another blanket cylinder for printing on the opposite side of the web or sheet [of] material or simply a support cylinder when printing is desired only on one side of the web or sheet.

'734 patent, col. 1, ll. 33-49.

Each of the patents-in-suit claims a printing blanket.  In the '734 patent, claim 1 recites:

> A tubular printing blanket for use on a blanket cylinder in an offset printing press comprising:
>
> a rigid cylindrical inner layer;

>       an <u>outer printing layer</u> for transferring an ink
>       pattern to a web; and
>
>       an intermediate compressible layer between said
>       inner and outer layers, the tubular printing
>       blanket being radially expandable so as to enable
>       the blanket to be axially mounted onto the blanket
>       cylinder of the offset printing press.

'734 patent, col. 12, ll. 28-38 (emphasis added).  The '100 patent claims, among other things:

>   e)   a removable printing blanket mounted axially over
>        the blanket cylinder, the printing blanket being
>        tubular in shape and having an outer first
>        circumferential surface; [and]
>
>   . . .
>
>   h)   the removable printing blanket further comprising
>        an <u>outer printing layer</u> for transferring ink from
>        the printing plate; a gapless rigid, cylindrical
>        inner layer; and an intermediate, compressible
>        layer.

'100 patent, col. 12, ll. 35-37, 51-54 (emphasis added).  And the '251 patent claims, among other things:

>   e)   a removable printing blanket mounted axially over
>        the blanket cylinder, the printing blanket being
>        tubular in shape; [and]
>
>   h)   the removable printing blanket comprising a rigid
>        cylindrical inner layer; an <u>outer printing layer</u>
>        for transferring an ink pattern to a web; and an
>        intermediate compressible layer between said inner
>        and outer layers; wherein the removable printing
>        blanket has an outer circumferential surface and
>        is radially expandable so as to enable the blanket

>           to be axially mounted onto the blanket cylinder of
>           the offset printing press.

'251 patent, col. 12, ll. 49-51, 63-67, col. 13, ll. 1-3 (emphasis added).

Defendants move for an order construing the term "outer printing layer" to "require the outer printing layer to be gapless and continuous, i.e. devoid of any gap, seam or splice." Plaintiff objects, and moves for an order construing the term without the limitations advocated by defendants.

Both parties are correct, to a point. The outer printing layer claimed in the patents-in-suit must be gapless, as that term is narrowly defined in the specification, but that layer need not be devoid of any seam or splice.

The common specification for all three patents-in-suit defines the pertinent field as "gapless tubular printing blankets." And the section of that specification titled "Objects and Summary of the Invention" discloses that the invention includes "a gap-free" or "gapless" printing blanket that is tubular in shape and that has "a continuous outer circumferential gap-free surface." See, e.g., '734 patent, col. 3, ll. 10, 15,

31-32.  The specification makes clear that the invention is or includes a gapless printing blanket.

Next it is necessary to construe the term "gapless."  As the Federal Circuit recently explained: "the specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996)).  Moreover, "[the Federal Circuit's] cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess [and that] [i]n such cases, the inventor's lexicography governs."  Phillips, 415 F.3d at 1316 (citing CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002)).

Here, the common specification for the three patents-in-suit provides:

> Conventional printing blankets are manufactured as a flat sheet.  Such a printing blanket is mounted on a blanket cylinder by wrapping the sheet around the blanket cylinder and attaching the opposite ends of the sheet to the blanket cylinder in an axially extending gap in the blanket cylinder.  The adjoining opposite

>     ends of the sheet define a gap extending axially along
>     the length of the printing blanket.

'734 patent, col. 1, ll. 50-56.  As used in the patents-in-suit, the term "gap" describes an axial opening or slot in a blanket cylinder and it also describes that area between the adjoining opposite ends of a flat printing blanket installed on a blanket cylinder in an axially extending gap in the blanket cylinder.  A printing blanket gap consists, then, of that area defined as lying between the adjoining opposite ends of a printing blanket that have been inserted into an axial opening in a blanket cylinder.  By extension, if a printing blanket with a gap is a blanket installed by means of a blanket cylinder gap, then a "gapless" printing blanket must be installed without using a blanket cylinder gap.  Moreover, given the definition of "gap" provided by the specification, if a printing blanket is gapless, then all layers comprising the printing blanket are necessarily gapless (<u>i.e.</u>, not inserted into a gap in the cylinder).  Because the invention of the patents-in-suit is or includes a gapless printing blanket, the term "outer printing layer" must be construed as including a "gapless" limitation as "gap" is defined by reference to the specification.[1]

---

[1] Because the specification discusses the invention generally as being or including a gapless printing blanket, and

On that basis, defendants are not entitled to a construction of the term "outer printing layer" that includes a "seamless" limitation. While the specification plainly supports a "gapless" limitation, neither the claims nor the specification provide any support for a "seamless" limitation, if a seam is defined as something other than a gap.[2] The specification defines the term "gap," but it does not define, or even mention the term "seam." The specification explains the various advantages of a gapless printing blanket, including decreased vibration and increased printing speed, but nowhere does the specification tout the advantages of a gapless and seamless printing blanket over a gapless printing blanket with a seam. Thus, the specification does not support a "seamless" limitation.

---

does so before any discussion of a preferred embodiment, it is not accurate to say that applying the "gapless" limitation to the outer printing layer claim involves limiting that claim to a preferred embodiment. See Varco, L.P. v. Payson Sys. USA Corp., 436 F.3d 1368, 1375 (Fed. Cir. 2006) (citations omitted) (discussing the error of limiting a claim to a preferred embodiment).

[2] As explained above, the patentee provided, in the common specification, a definition of "gap." MAN Roland seeks, in essence, to expand the definition of "gap" to include concepts such as "seam" or "splice." While standard usage or dictionary definitions might well support the definition of "gap" that MAN Roland advocates, the patentee is entitled to define the claim terms, and the patentee's definition controls. See Phillips, 415 F.3d at 1316 (citation omitted).

Defendants rely upon the prosecution history to support an argument for a "seamless" limitation.  During the examination of Application No. 07/699,668 ("the '668 application"), which is included in the chain of applications listed in each of the patents-in-suit, a broader definition of the term "gap" was suggested in an amendment filed in response to an obviousness rejection.  Claim 1 of the '668 application recited:

> A tubular printing blanket for a blanket cylinder in an offset printing press, said printing blanket comprising:
>
> a cylindrical sleeve movable axially over a blanket cylinder;
>
> a compressible layer over said sleeve, said compressible layer comprising a first seamless tubular body of elastomeric material containing compressible microspheres;
>
> an inextensible layer over said compressible layer, said inextensible layer comprising a second seamless tubular body of elastomeric material and a tubular sublayer of circumferentially inextensible material; and
>
> a seamless tubular printing layer over said inextensible layer, said printing layer having a continuous, gapless cylindrical printing surface.

(Defs.' Mot for Claim Constr. (document no. 142), Ex. 7 at 25.) In an office action dated August 17, 1992, that claim was rejected as obvious "over Tittgemeyer in view of Gaworowski et al."  (Defs.' Obj. to Pl.'s Mot. for Claim Constr., Ex. 42 at 2.)

According to the examiner, the Tittgemeyer patent (No. 4,913,048) teaches a gapless blanket cylinder with a sleeve that moves axially over it and discloses a printing blanket with a seamless outer layer free of gaps, while the seamless inner layers of claim 1 are disclosed in the Gaworowski patent (No. 4,086,386). (Id. at 2-3.)  The applicants responded by filing an amendment, dated November 17, 1992, in which they rewrote claim 1 to recite:

> A cylindrical printing blanket for a blanket cylinder in an offset printing press, said cylindrical printing blanket comprising:
>
> a cylindrical sleeve movable axially over the blanket cylinder;
>
> a <u>gapless and seamless</u> cylindrical compressible layer over said sleeve, said compressible layer including a first circumferentially endless tubular body of elastomeric material containing compressible means;
>
> a <u>gapless and seamless</u> cylindrical inextensible layer over said compressible layer, said intextensible layer including a circumferentially inextensible material; and
>
> a cylindrical printing layer over said inextensible layer, said printing layer having a <u>gapless and seamless</u> cylindrical printing surface.

(Defs.' Mot. for Claim Constr., Ex. 20 at 3 (emphasis supplied).) In addition to rewriting claim 1, the inventors responded to the rejection of claim 1, in a written amendment, in the following way:

> Original claim 1 was rejected under 35 U.S.C. 103 as being unpatentable over Tittgemeyer in view of Gaworowski et al.  Claim 45 overcomes the rejection of original claim 1 because new claim 45 defines a plurality of cylindrical layers on a sleeve, including a <u>cylindrical compressible layer</u> which is <u>gapless and seamless</u>, and a <u>cylindrical inextensible layer</u> which is <u>gapless and seamless</u>.
> 	No prior art reference discloses a cylindrical printing blanket with a plurality of cylindrical layers on a sleeve.  No prior art reference discloses a cylindrical compressible layer that is gapless and seamless.  Furthermore, no prior art reference discloses a cylindrical inextensible layer that is gapless and seamless.
> 	The issue presented in the rejection of claim 1 was whether it would have been obvious to include the inner layers of Gaworowski et al. in the cylindrical blanket of Tittgemeyer.  The layers of Gaworowski et al. are not gapless and seamless <u>cylinders</u>.  More specifically, the blanket of Gaworowski et al. is a flat sheet which is wrapped around a blanket cylinder in the conventional manner to define a gap between its opposite ends.  The layers 22 and 24 in the blanket likewise are flat sheets having opposite ends, and extend circumferentially between their opposite ends when the blanket is wrapped around a cylinder.  If the layers 22 and 24 were included in the [gapless] Tittgemeyer cylinder, they would be wrapped around the cylinder, and would thus extend circumferentially between their opposite ends.  Their opposite ends would define gaps or seams.  The Gaworowski et al. patent does not disclose or suggest any other way in which the layers 22 and 24 could be included in the Tittgemeyer blanket.

(<u>Id.</u> at 6-7 emphasis in the original).)


Taken out of context, language from the amendment to the '668 application quoted above seems to suggest that, at one

10

point, the inventors understood the term "gap" to include a seam between the ends of a flat blanket wrapped around a gapless blanket cylinder. But viewed in context, the prosecution history does not support imposition of a "seamless" limitation on the "outer printing layer" claim.

Original claim 1 of the '668 application recited "a seamless tubular printing layer." In the amendment quoted by defendants, that claim was rewritten to recite "a cylindrical printing layer over said inextensible layer, said printing layer having a gapless and seamless cylindrical printing surface." Given the examiner's reference to Tittgemeyer's "seamless outer layer," it appears that the inventors disavowed a seamless outer layer, in favor of a seamless outer surface, in order to avoid Tittgemeyer. Had the inventors amended the claim to <u>include</u> a seamless outer printing layer then, perhaps, the prosecution history might support a "seamless" limitation on the "outer printing layer" claim. But where the limitation defendants advocate was actually eliminated by the amendment rather than added by it, the prosecution history does not support, but actually undermines, defendants' position.

Based upon the specification and the prosecution history, the court construes the term "outer printing layer" to include a "gapless" limitation, but only to the extent that a gapless printing blanket is defined as a printing blanket installed without the use of a blanket cylinder gap, and a gapless layer is defined as any layer of a gapless printing blanket. Defendants are not, however, entitled to a definition of the term "gap," in the context of a printing blanket, that includes a seam resulting when two ends of a flat printing blanket are wrapped around a gapless blanket cylinder to form a continuous, albeit joined, surface. The inventors plainly disavowed a "gapped" printing blanket. But there is no evidence that they disavowed a "seamed" printing blanket, and there is evidence that they did disavow a "seamless" one.

Accordingly, the cross-motions for claim construction (document nos. 142 (MAN Roland) and 189 (Goss)) are granted in part and denied in part, as explained herein.

Given the court's determination that the printing blanket claims in the patents-in-suit are subject to a gapless limitation, MAN Roland's motion for summary judgment of invalidity (document no. 146) is moot. In its memorandum of law

in support of that motion, defendant states: "In the event, however, that the claims are not construed to require 'gapless' printing blankets, then MAN requests entry of summary judgment pursuant to 35 U.S.C. § 112."  (Def.'s Mem. of Law (document no. 166) at 1).  The claims are construed to require gapless printing blankets, as defined.

   **SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 26, 2006

cc:  Daniel E. Will, Esq.
     Hugh T. Lee, Esq.
     Richard S. Gresalfi, Esq.
     Georg C. Reitboeck, Esq.
     Mark A. Hannemann, Esq.
     Michael J. Lennon, Esq.
     T. Cy Walker, Esq.
     Danielle L. Pacik, Esq.
     Jonathan M. Shirley, Esq.
     Alfred H. Hemingway, Jr., Esq.
     Irvin D. Gordon, Esq.
     Martin B. Pavane, Esq.
     Michael J. Songer, Esq.
     Shari R. Lahlou, Esq.
     Sidney R. Bresnick, Esq.
     Teodor J. Holmberg, Esq.
     Richard D. Margiano, Esq.
     John F. Sweeney, Esq.
     Steven F. Meyer, Esq.
     Tony V. Pezzano, Esq.
     Bruce W. Felmly, Esq.
     Seth J. Atlas, Esq.
     Anthony S. Augeri, Esq.