UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Goss International Americas, Inc.,
        Plaintiff

        v.

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
        Defendants

                                        Civil No. 03-cv-513-SM
                                        Opinion No. 2006 DNH 053

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
        Counterclaim Plaintiffs

        v.

Goss International Americas, Inc.
and Heidelberger Druckmaschinen AG,
        Counterclaim Defendants

<u>**O R D E R**</u>

        Before the court are various discovery motions filed by Goss International Americas, Inc. ("Goss"), MAN Roland, Inc. and MAN Roland Druckmaschinen AG (collectively "MAN Roland"), and Heidelberger Druckmaschinen AG ("Heidelberger").  Those motions are granted and denied as explained below.

In <u>document no. 72</u>, Goss moves to compel defendants to produce various documents and to release certain product samples from the protective order in this case so that its employees may examine those samples in preparation for trial.  MAN Roland says all issues raised by Goss are moot except for the request to release the product samples from the protective order.  MAN Roland insists that the product samples must remain protected to safeguard trade secrets or proprietary information of third parties that may be contained therein.  MAN Roland, however, has produced nothing to suggest that the product samples either include proprietary information or are sold under confidentiality agreements.  Accordingly, Goss's motion to compel (document no. 72) is **<u>granted</u>**; the product samples may be examined by Goss's employees.

In <u>document no. 78</u>, Heidelberger moves to stay certain electronic discovery and to have MAN Roland share the costs of producing that discovery.  Heidelberger's motion to stay is now moot, its Rule 11 and Rule 12(b)(6) motions having been resolved. Heidelberger's request to have MAN Roland share in the costs of producing the disputed electronic discovery is **<u>denied</u>**; the

circumstances of this case do not come within the reach the rule developed in <u>Zubulake v. UBS Warburg LLC</u>, 216 F.R.D. 280 (S.D.N.Y. 2003).

        In <u>document no. 104</u>, Goss moves to compel production of documents pertaining to defendants' advice of counsel defense. As MAN Roland indicated, in its objection, that it would produce the disputed documents in late January 2006, at the conclusion of discovery, Goss's motion is presumed to be **moot**.  If MAN Roland has not yet produced those documents it shall do so.

        In <u>document no. 111</u>, MAN Roland moves to compel Goss to produce another Rule 30(b)(6) witness, because the one deposed on November 17, 2005, Jackson Jones, was not prepared to testify substantively and was prevented from disclosing which documents he reviewed prior to testifying.  Goss counters that its counsel prevented Jones from testifying only with respect to improper subjects of inquiry, such as claim construction, and that information about which documents Jones reviewed (all provided by counsel) was protected by attorney-client and/or work product privilege.

Whether information about the materials Jones reviewed prior to his deposition can be privileged is an interesting question, but since the only relief MAN Roland seeks is an order compelling Goss to produce a witness to testify about unaddressed issues remaining after the April 19, 2005, deposition, the court will confine itself to that question.  From portions of the deposition transcript submitted by MAN Roland, it appears that the deposition was terminated when counsel for MAN Roland insisted upon asking Jones about claim construction.  Counsel for Goss was correct in objecting, because claim construction is a question of law, and legal contentions are not a proper subject for factual discovery.  See SmithKline Beecham Corp. v. Apotex Corp., No. 99-CV-4303 et al., 2004 WL 739959, at *2-*4 (E.D. Pa. March 23, 2004) (ruling that certain categories of proposed deposition pertained to legal positions that should be ascertained by means of interrogatories rather than deposition); In re Indep. Serv. Orgs. Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan. 1996) (granting protective order against Rule 30(b)(6) deposition inquiry into legal conclusions, on grounds that producing responses to such questions is "overbroad, inefficient, and unreasonable); McCormick-Morgan, Inc. v. Teledyne Indus., Inc.,

4

134 F.R.D. 275, 285–88 (N.D. Cal. 1991) (ordering both parties to use contention interrogatories rather than Rule 30(b)(6) deposition to ascertain other side's legal positions).  Because the only information MAN Roland appears not to have obtained from the Goss witness was his position on claim construction, MAN Roland's motion to compel (document no. 111) is **<u>denied</u>**.

In <u>document no. 121</u>, MAN Roland moves to bifurcate the issues of damages and willful infringement for a separate trial, as well as for an order staying discovery on the issue of willful infringement until after the liability issues have been resolved. Goss and Heidelberger object, noting, <u>inter alia</u>, that MAN Roland has previously argued, in opposition to Goss's motion to bifurcate, that all the claims, counterclaims, and defenses in this case should be tried together.  MAN Roland's arguments in favor of bifurcation are no more compelling than those previously made by Goss.  While the parties seem content to geometrically increase the time, effort, and expense of resolving this rather straight-forward patent case, far beyond what is necessary, the court simply does not have that luxury.  MAN Roland's motion to bifurcate (document no. 121) is **<u>denied</u>**.

In <u>document no. 180</u>, MAN Roland asks the court to compel Goss to produce documents related to: (1) expert testimony provided by Dr. Harvey Levenson in an unrelated patent infringement suit against Mitsubishi,[1] and (2) declarations by Dr. Levenson, submitted by Heidelberger to the PTO during the prosecution of the patents-in-suit.  While Dr. Levenson was an expert witness in the Mitsubishi litigation, and was retained to provide declarations during the prosecution of the patents-in-suit, he is neither a testifying nor consulting expert in this litigation.

MAN Roland offers no legal basis for its claim of entitlement to the documents Dr. Levenson reviewed to prepare his opinions and testimony in the Mitsubishi litigation, and Goss contends that it has produced all the documents that are responsive to MAN Roland's discovery requests, other than those subject to a protective order in the Mitsubishi litigation.  MAN Roland argues that Goss should produce redacted versions of those documents, rather than withhold them in their entirety; Goss counters that it is bound by the protective order and that MAN

---

[1] In that proceeding, Levenson was retained, as an expert, by Goss's predecessor in interest, Heidelberg Harris, Inc.

Roland has asked neither Mitsubishi nor the court that heard the Mitsubishi case for relief from the protective order.  MAN Roland is not entitled to the Mitsubishi-related material it requests.

MAN Roland is also not entitled to any additional documents concerning Dr. Levenson's PTO declarations.  In MAN Roland's view, the holding in <u>Hewlett-Packard Co. v. Bausch & Lomb, Inc.</u>, 116 F.R.D. 533 (N.D. Cal. 1987), entitles it to: (1) all documents concerning the information provided to Dr. Levenson during his preparation of declarations submitted to the PTO during the prosecution of the patents-in-suit; and (2) all documents concerning any opinions expressed in those declarations.  Goss objects on grounds that the material MAN Roland seeks is privileged work product.

<u>Hewlett-Packard</u> is inapposite.  That case was decided under FED. R. CIV. P. 26(b)(4), because the expert in question, who had provided a declaration to the PTO, was also a testifying expert at trial.  Here, by contrast, Rule 26(b)(4) does not apply, because Dr. Levenson is not a testifying expert.  The cross-examination concerns that animated the decision in <u>Hewlett-</u>

Packard are entirely absent from this case.  Moreover, Hewlett-Packard involved a different kind of PTO proceeding than the ones in which Dr. Levenson gave declarations.  In Hewlett-Packard, the expert's declarations supported patent validity in the context of a reexamination action, while here, Dr. Levenson's declarations were offered during patent prosecution.  That distinction is meaningful because in Hewlett-Packard, the reexamination petition and the court case were brought at nearly the same time, by the same party, and both actions asserted the same arguments for invalidity, making the expert witness's declaration in the reexamination action virtually identical to his expert report and testimony in the court case.  Here, of course, Goss has not retained Dr. Levenson as an expert witness.

Not only is Hewlett-Packard inapposite, but in addition, MAN Roland has failed to demonstrate that the documents it seeks are relevant to any claim in this case.  Obviously, MAN Roland contends that the patents-in-suit are invalid, but it does not explain how the manner in which Dr. Levenson prepared his PTO declarations has any relevance to its claims of invalidity.  The patents are valid or they are not, based upon well-established

principles of patent law.  In <u>Hewlett-Packard</u>, drafts of a patent
holder's testifying expert's declarations to the PTO in a
reexamination proceeding (that was nearly parallel to a
declaratory judgment action claiming invalidity) were
discoverable because they would aid the patent challenger in
cross-examining the patent holder's expert in court, where he was
offering an opinion virtually identical to the declaration filed
with the PTO.  Neither <u>Hewlett-Packard</u> nor MAN Roland suggest any
other use for the material MAN Roland seeks, and since that
particular use is precluded in this case – Dr. Levenson is not a
testifying expert – the material is not relevant.  MAN Roland is
not entitled to the PTO-related material it seeks.

Accordingly, MAN Roland's motion to compel (document no.
180) is **<u>denied</u>**.

In <u>document no. 183</u>, MAN Roland moves to preclude Goss from
claiming infringement under the doctrine of equivalents ("DOE").
Invoking Fed. R. Civ. P. 37(c)(1), MAN Roland argues that Goss
should be barred from making a claim under the DOE because,
during discovery, it failed to give timely notice of its intent

to rely upon that theory of liability.  MAN Roland is responding to an expert report from Goss, served before the close of discovery, that suggested infringement under the DOE.  In MAN Roland's view, that suggestion contradicted an interrogatory answer in which Goss appeared to claim only literal infringement.  However, given MAN Roland's interrogatory, which lumped literal infringement with infringement under the DOE, and MAN Roland's own failure to ask directly whether Goss intended to rely on the DOE (which it could easily have done), Goss's interrogatory response cannot fairly be read as disclaiming any intent to prove infringement by equivalents.

Two additional factors counsel against awarding the relief MAN Roland seeks.  First, the DOE is not a separate cause of action; it is simply an alternative means of proving infringement.  A simple claim of patent infringement is sufficient to put a defendant on notice that a plaintiff may rely upon the doctrine of equivalents.  Second, the Rule 37(c)(1) sanction is a prohibition on the use of improperly disclosed evidence at trial, not a bar to making an imperfectly disclosed legal argument.  Accordingly, MAN Roland's motion to preclude

Goss from claiming infringement under the doctrine of equivalents (document no. 183) is **<u>denied</u>**.

In <u>document no. 185</u>, MAN Roland moves to compel Goss to produce various employees for depositions.  In MAN Roland's view, the two separate scheduling orders in this case – the first one involving MAN Roland and Goss, the second involving MAN Roland and Heidelberger – entitle it to the total number of depositions listed in both orders (either twenty-five or thirty), rather than the fifteen provided for by the first of the two scheduling orders.  Goss and Heidelberger both object, on grounds that MAN Roland has already taken more than the fifteen depositions to which it is entitled and that allowing more depositions at this late date could disrupt the briefing schedule.

The second scheduling order in this case was entered after Goss asserted a third infringement claim against MAN Roland and after MAN Roland asserted its antitrust (and related) counterclaims against Goss and Heidelberger.  MAN Roland says Goss and Heidelberger are claiming the right to a total of twenty-five depositions between them, while trying to limit MAN

Roland to fifteen.  Goss and Heidelberger counter that MAN Roland
is claiming the right to take thirty depositions, while trying to
limit them to a total of fifteen.  In any event, because
Heidelberger is, in fact, another "side" for discovery purposes,
MAN Roland is entitled to fifteen depositions from Goss and
fifteen from Heidelberger, while Goss and Heidelberger are each
entitled to fifteen depositions from MAN Roland.  Accordingly,
MAN Roland's motion to compel (document no. 185) is **granted**, and,
necessarily, Goss's cross motion for a protective order (document
no. 236) is **denied**.

     In document no. 186, Goss moves in limine for an order
barring MAN Roland from using, in support of four pending summary
judgment motions and its claim construction motion, deposition
testimony taken from four Heidelberger employees in Germany on
December 13, 14, 15, and 16.[2]  In Goss's view, that deposition
testimony may not be used because the depositions were taken
within a foreign country, and not consistently with the
requirements of FED. R. CIV. P. 28(b).  Both Goss's motion and

---

     [2] Given Goss's objection to use of the disputed depositions
in support of various pre-trial motions, its motion is probably
better thought of as a motion to strike than a motion in limine.

12

supporting memorandum and MAN Roland's response are pretty much
off the mark.

    MAN Roland initially sought to depose four Heidelberger
employees in the United States.  Heidelberger agreed to
facilitate those depositions but preferred that they be conducted
in Germany, where the employees lived.  MAN Roland acquiesced.
By agreement, then, MAN Roland deposed the four Heidelberger
employees, before court reporters from California, in a hotel in
Heidelberg, Germany.  Goss had adequate notice weeks before the
depositions were scheduled to take place and, of course was
entitled to attend and participate.

    The first deposition was scheduled to begin in Germany on
December 13, 2005.  On the eve of that deposition – on December
12 – counsel to Goss faxed a letter to opposing counsel
registering Goss's objection to the depositions basically on
grounds that the procedure agreed to by MAN Roland and
Heidelberger involved an unqualified officer – that is, the court
stenographer(s) from California were not authorized to administer
oaths in Germany.

Needless to say, by the time the fax was sent, Goss was aware that counsel and stenographers had already incurred substantial expense for travel and had actually traveled to Germany.  A suspicious mind might find the timing to be not coincidental, and consistent with an objectionable spirit.  If the court were inclined to respond in the same spirit it would simply point out that Goss's letter merely notifies opposing counsel of Goss's intent to "object to the admissibility of any such [deposition] testimony in the event that it is offered as evidence at trial in this litigation."  Letter from Georg Reitboeck, dated December 12, 2005.  Since the parties are not offering any deposition testimony at trial, yet, and Goss's objection was plainly limited, any broader scope objection that might have been made was forfeited and there is no issue, yet.  But the court is not so inclined.

Under Fed. R. Civ. P. 32(d)(2), any "[o]bjection to taking a deposition because of disqualification of the officer before whom it is to be taken is waived unless made before the taking of the deposition begins or as soon thereafter as the disqualification becomes known or could be discovered with reasonable diligence."

14

Technically, Goss probably objected before the depositions "began," though a plausible argument might be made that under these circumstances "begins" should be construed to mean when counsel actually left the country to take the depositions.  But it doesn't matter because, in the end, Goss's sharp practice cannot win out.  Based on this record I conclude that Goss's counsel deliberately waited until opposing counsel and parties were prejudiced before springing their objection, and, because of that inequitable litigation conduct, are properly estopped from lodging an objection in this court.

Moreover, Rule 28(b)(4) empowers this court to commission a person to administer any necessary oath and to take testimony in a foreign country, which commission shall be issued "on application and notice and on terms that are just and appropriate."  Had Goss raised a timely good faith objection, and had MAN Roland or Heidelberger thereupon applied for issuance of a commission, the court would have undoubtedly granted it.  The court hereby grants, *nunc pro tunc*, a commission to the court stenographer(s) before whom the depositions were taken, as of the

beginning of the first and extending through the last deposition, to administer oaths and take testimony in Germany as was done.

Goss presumably has access to the depositions taken, so is not prejudiced.  To the extent it actually wished to be present, and to inquire, Heidelberger shall reschedule the depositions of the same witnesses, in Germany, to allow Goss to ask appropriate questions, but, Goss shall pay the reasonable travel, hotel and subsistence costs incurred by opposing counsel and the stenographer(s), as well as the reasonable attorneys' fees of MAN Roland and Heidelberger, as well as the stenographic fees, associated with its resumption of those depositions.

The motion in limine (document no. 186) is **<u>denied</u>**.

### Summary

For the reasons given, the relief requested in documents 72, 104, and 185 is granted.  The relief requested in documents 78, 111, 121, 180, 183, 186, and 236 is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 28, 2006

cc:  Daniel E. Will, Esq.
     Hugh T. Lee, Esq.
     Richard S. Gresalfi, Esq.
     Georg C. Reitboeck, Esq.
     Mark A. Hannemann, Esq.
     Michael J. Lennon, Esq.
     T. Cy Walker, Esq.
     Danielle L. Pacik, Esq.
     Jonathan M. Shirley, Esq.
     Alfred H. Hemingway, Jr., Esq.
     Irvin D. Gordon, Esq.
     Martin B. Pavane, Esq.
     Michael J. Songer, Esq.
     Shari R. Lahlou, Esq.
     Sidney R. Bresnick, Esq.
     Teodor J. Holmberg, Esq.
     Richard D. Margiano, Esq.
     John F. Sweeney, Esq.
     Steven F. Meyer, Esq.
     Tony V. Pezzano, Esq.
     Bruce W. Felmly, Esq.
     Seth J. Atlas, Esq.
     Anthony S. Augeri, Esq.