UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Goss International Americas, Inc.,
     Plaintiff

     v.

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Defendants

                                        Civil No. 03-cv-513-SM
                                        Opinion No. 2006 DNH 056
MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Counterclaim Plaintiffs

     v.

Goss International Americas, Inc.
and Heidelberger Druckmaschinen AG,
     Counterclaim Defendants

**O R D E R**

Before the court are fifteen motions for summary judgment filed by Goss International Americas, Inc. ("Goss"), MAN Roland, Inc. and MAN Roland Druckmaschinen AG (collectively "MAN Roland"), and Heidelberger Druckmaschinen AG ("Heidelberger"). Three of those motions, presented in document nos. 75, 99, and 117, are denied; one, presented in document no. 153 is granted; one, presented in document no. 155, is granted in part; and one, presented in document no. 146, is moot.

In document no. 75, MAN Roland moves for partial summary judgment, asserting that the '734 and '100 patents are unenforceable for a period running from November 18, 2003, through August 6, 2004, and that the '251 patent is unenforceable for a period running from May 25, 2004, through August 6, 2004, because, during those periods, the patents-in-suit were not commonly owned with certain other patents, the existence of which created an obviousness-type double-patenting problem that Heidelberger overcame by filing terminal disclaimers. MAN Roland's motion for summary judgment presents what appears to be a question of first impression: whether a patent owned by a parent company and a patent owned by a wholly owned subsidiary are "commonly owned" for purpose of a terminal disclaimer filed to overcome an obviousness-type double- patenting rejection.

MAN Roland's strongest support comes from Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 305 F. Supp. 2d 939 (E.D. Wis. 2004). In that case, the court granted the defendants' Rule 60(b)(3) motion to vacate the judgment, based upon the plaintiff's failure to disclose that it had assigned a particular patent (the '860) to a wholly owned passive investment corporation (while taking back a non-exclusive license). Id. at 959-61. In the Schreiber court's view, the plaintiff's

affirmative misrepresentation that it owned the '860 patent was material because, among other things, the "[d]efendants would have had a compelling argument that the '724 patent was unenforceable because it was not commonly owned with the '860." Id. at 960 (citing Merck & Co. v. U.S. Int'l Trade Comm'n, 774 F.2d 483, 485 (Fed. Cir. 1985)).  Accordingly, "[i]f defendants had known about the assignment of the '860, it is unlikely that the issue of whether the '724 was infringed would have even gotten to the jury." Id.

   Goss's strongest support comes from the Manual of Patent Examining Procedure ("MPEP").  The section of the MPEP discussing the requirements of terminal disclaimers refers readers to MPEP § 706.02(1)(2) "for examples of common ownership, or lack thereof." MPEP at 1400-79.  According to Example 1 in § 706.02(1)(2), "Parent Company owns 100% of Subsidiaries A and B – inventions of A and B are commonly owned by the Parent Company."  While that example does not precisely describe the situation presented in this case, it would seem to follow that if the parent company in the MPEP example commonly owned the inventions of both of its wholly owned subsidiaries, its own inventions would also be commonly owned along with the inventions of its wholly owned

subsidiaries. The court so concludes, and MAN Roland's motion for summary judgment (document no. 75) is **denied**.

In document no. 97, MAN Roland moves for partial summary judgment, asserting that the '100 patent is limited to an effective filing date of April 7, 1992, while in document no. 117, Goss moves for partial summary judgment that the '100 patent is entitled to an effective filing date of October 5, 1989. According to MAN Roland, one of the continuing applications through which Goss claims the earlier priority date fails to disclose an essential feature of the invention that was disclosed in previous and subsequent applications (the so-called "sidewall feature"), and that the absence of the sidewall feature from the intermediate application creates a hiatus in disclosure that precludes Goss from gaining the benefit of the earlier filing date.[1] Goss counters that the sidewall feature is inherent in

---

[1] The '100 patent claims an offset printing press. The first and third applications in the chain of applications also claimed printing presses, while the second one (the intermediate application) claimed only a printing blanket for use in an offset printing press. The alleged hiatus in disclosure does not involve the printing blanket per se, but, instead, involves the sidewall feature, which is, in essence, a door-like opening in the sidewall of an offset printing press that allows the printing blanket to be telescopically installed on and removed from the blanket cylinder. The first application, the third application, and the '100 patent all explicitly disclose the sidewall feature while the second application, which claimed only a printing

the intermediate application, meaning that there is no hiatus in disclosure and, thus, that it is entitled to the earlier date.

"In order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1571 (Fed. Cir. 1997) (citing In re Hogan, 559 F.2d 595, 609 (C.C.P.A. 1977)). "Whether a specification complies with the written description requirement of section 112, first paragraph, is a question of fact . . ." Lampi Corp. v. Am. Power Prods., Inc., 228 F.3d 1365, 1378 (Fed. Cir. 2000) (citing Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563 (Fed. Cir. 1991)).  Here, there is a factual dispute over whether the specification in the intermediate application complies with section 112; all parties agree that the intermediate application does not describe the sidewall feature, but Goss contends that such a feature is inherent in that application.  Because there appears to be a material fact in

---

blanket, does not.  Despite the fact that the second application claimed only a printing blanket, the examiner allowed it to be included in the chain of continuation applications listed on the face of the '100 patent.

dispute, and the record is not fully developed, both motions for summary judgment (documents nos. 97 and 117) are **denied**.

In document no. 146, MAN Roland moves for summary judgment on grounds of invalidity under 35 U.S.C. §§ 102 and 112, "in the event . . . that the claims [of the patents-in-suit] are not construed to require 'gapless' printing blankets." Because the court has construed the claims to include a "gapless" limitation, in a separate claim construction order, MAN Roland's motion for summary judgment (document no. 146) is **moot.**

In document no. 153, Goss moves for partial summary judgment, asserting that Canadian Patent Application Serial No. 2,026,954 is not "prior art" to the patents-in-suit. The issue arises because MAN Roland asserts that the effective filing date for at least one of the patents-in-suit should be April 7, 1992, and that the Canadian patent application became a "printed publication," and thus constituted potentially invalidating prior art, see 35 U.S.C. § 102(b), on April 6, 1991. Goss counters that because April 6, 1991, fell on a Saturday, a day on which the Canadian Patent Office was not open to the public, the Canadian application was not available to the public until the

following Monday, April 8, bringing its publication within the one year allowed by 35 U.S.C. § 102(b).  Goss is correct.

A person is not entitled to a patent if "the invention was . . . described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).  "The determination of whether a reference is a 'printed publication' under 35 U.S.C. § 102(b) involves a case-by-case inquiry into the facts and circumstances surrounding the reference's disclosure to members of the public."  In re Klopfenstein, 380 F.3d 1345, 1350 (Fed. Cir. 2004) (citing In re Cronyn, 890 F.2d 1158, 1161 (Fed. Cir. 1989); In re Hall, 781 F.2d 897, 899 (Fed. Cir. 1986)).  "[T]hroughout [the Federal Circuit's] case law, public accessibility has been the criterion by which a prior art reference will be judged for the purposes of § 102(b)."  Klopfenstein, 380 F.3d at 1350.  More specifically, "[t]he statutory phrase 'printed publication' has been interpreted to mean that before the critical date the reference must have been sufficiently accessible to the public interested in the art; dissemination and public accessibility are the keys to the legal determination whether a prior art reference was 'published.'"  In re Cronyn, 890 F.2d at 1160 (quoting Constant v.

<u>Advanced Micro-Devices, Inc.</u>, 848 F.2d 1560, 1568 (Fed. Cir. 1988)).

Here, it is undisputed that: (1) the "[d]ate on which the application was made available for public inspection" listed on the front page of the Canadian patent is April 6, 1991; (2) April 6, 1991, was a Saturday; (3) the Canadian Patent Office was closed on Saturdays and Sundays in 1991; and (4) in 1991, the only way the public could gain access to Canadian patent applications was by physical inspection at the Canadian Patent Office.  Goss argues that the application did not become available to the public until Monday, April 8, 1991, when the Canadian Patent Office opened for business.  MAN Roland counters that "[m]embers of the public accompanied by an authorized CPO employee could have inspected the Application on Saturday, April 6, 1991," and that "a sufficiently motivated member of the public could have inspected the Application on April 6, 1991 in the company of an authorized CPO employee."  MAN Roland supports that position by citing the following deposition testimony given by Goss's expert witness on Canadian Patent Office procedure:

> Q.  You are absolutely positive that the public has never been in the Canadian Patent Office on a Saturday?
>         MR. REITBOECK: Objection.  Argumentative.

>       A.  If I have to say absolutely positive, I cannot
> say that, because I might have gone in on a Saturday
> myself and taken my children in.
>       Q.  All right.  How did you get in?
>       A.  How do I get in?  I go to the security guard,
> I speak to the security guard, I show him my pass, I
> give him my son's name and we both sign in and then we
> go in.
>       Q.  So an examiner can come in on a Saturday;
> right?
>       A.  He could.
>       Q.  An examiner can take a friend with him;
> correct?
>       A.  In theory.
>       Q.  Can take a family member with him?
>       A.  He could.

(DeGrave Decl. (document no. 171), Ex. 1 (Davies Dep.) at p. 13, l.23 – p. 14, l.20).  That deposition testimony does not create a genuine issue of material fact concerning public access to the Canadian patent application at issue.  As a matter of law, the application was not generally accessible to the public until Monday, April 8, 1991.  That special arrangements to examine the application might have been made by a highly motivated member of the public is hardly the test.  Accordingly, Goss's motion for partial summary judgment on this issue (document no. 153) is **<u>granted</u>**.


In <u>document no. 155</u>, Goss moves for summary judgment on MAN Roland's fourth, fifth, and sixth counterclaims.  Goss is

entitled to summary judgment on the fourth and sixth counterclaims.

MAN Roland's sixth counterclaim asserts a Clayton Act violation. The Clayton Act prohibits certain acquisitions and, of course, Goss is not alleged to have acquired anything; Goss was the entity acquired by Goss International Corp. Accordingly, Goss is entitled to summary judgment on MAN Roland's sixth counterclaim.

Goss is also entitled to summary judgment on MAN Roland's fourth counterclaim, in which MAN Roland asserts that Heidelberger and Goss conspired in restraint of trade, 15 U.S.C. § 1, and conspired to monopolize, 15 U.S.C. § 2, by agreeing to enforce, through litigation and otherwise, the fraudulently procured '734, '100, and '251 patents. As set out in MAN Roland's counterclaim, the contours of the alleged conspiracy are sketchy at best – MAN Roland does not even hazard a guess as to who agreed to do what in exchange for what. Some focus is provided in MAN Roland's objection to Heidelberger's motion for summary judgment on Count 4, which MAN Roland incorporates by reference into its objection to Goss's summary judgment motion:

> MAN Roland alleges that a component of the transaction between HDAG ["Heidelberger"] was not only the transfer of the fraudulently obtained patents, but also an unlawful agreement to continue to enforce them against MAN Roland in sham litigation to drive MAN Roland out of the market and ensure Goss's position as the market leader – indeed the entrenched monopolist.

(MAN Roland's Obj. to Summ. J. (document no. 205) at 6.)  MAN Roland elaborates, suggesting:

> It is not hard to imagine HDAG's motive for entering into such a conspiracy.  Pursuant to the transaction between HDAG and Goss, HDAG maintained a fifteen percent ownership in the resulting company.  Thus, HDAG very much stood to gain from the parties' agreement.

(Id.)

MAN Roland's attempt at clarification does not help its case.  For one thing, there was no transaction between HDAG and Goss.  In its own memorandum, MAN Roland identifies "Goss" as "Goss International Americas, Inc."  Goss International Americas, Inc. is the former Heidelberg Web Systems ("HWS"), which Heidelberger sold to Goss International Corp.  Thus, there was a transaction between Heidelberger and Goss International Corp., but Goss – i.e., Goss International Americas, Inc. – was not a party to that transaction; it was the subject matter.  Moreover, MAN Roland is incorrect in asserting that Heildelberger, as a

11

part of the transaction with Goss International Corp., retained a fifteen-percent stake in Goss.  To the contrary, as a part of the purchase price, Heidelberger received "such number of newly issued shares of Common Stock of Purchaser [*i.e.*, Goss International Corp.] equal to approximately fifteen percent (15%) of the Fully Diluted Common Stock of Purchaser immediately following the consummation of the transactions contemplated by this agreement."  (MAN Roland's Obj. to Summ. J. (document no. 205), Ex. 1.)  In other words, Heidelberger received stock in Goss International Corp., not stock in Goss International Americas, Inc.  As a result of MAN Roland's conflation of Goss International Corp. and Goss International Americas, Inc., it is all but impossible to make sense of the fourth counterclaim, and on that basis alone, Goss is entitled to summary judgment.  <u>See Bridges v. MacLean-Stevens Studios, Inc.</u>, 201 F.3d 6, 14 (1st Cir. 2000) (affirming summary judgment for defendant on section 1 conspiracy claim on grounds that plaintiff's claim was illogical) (citing <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986)).

Moreover, even if it were possible to construct a logical conspiracy claim for MAN Roland, it would still fail due to MAN

Roland's failure to allege facts from which concerted action could reasonably be inferred.

> Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce."  15 U.S.C. § 1.  There are two prerequisites for a successful section 1 claim.  First, there must be concerted action. <u>Monsanto Co. v. Spray-Rite Serv. Corp.</u>, 465 U.S. 752, 761 (1984); <u>Podiatrist Ass'n,</u> [<u>Inc. v. La Cruz Azul de P.R., Inc.</u>,] 332 F.3d [6,] 12 [(1st Cir. 2003)].  Second, the actors' agreement must involve either restrictions that are per se illegal or restraints of trade that fail scrutiny under the rule of reason.  <u>Monsanto</u>, 465 U.S. at 761; Podiatrist Ass'n, 332 F.3d at 12.

<u>Euromodas, Inc. v. Zanella, Ltd.</u>, 368 F.3d 11, 16 (1st Cir. 2004) (parallel citations omitted).  Regarding the first prong of the test, the court of appeals for this circuit has held, in the context of a section 1 claim involving a vertical restraint of trade:

> To satisfy that requirement, there "must be evidence that tends to exclude the possibility of independent action by the manufacturer and distributor." <u>Monsanto</u>, 465 U.S. at 764.  Phrased another way, there must be "direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." <u>Id.</u> (citation and internal quotation marks omitted). . . .  Thus, absent a showing of concerted action, a section 1 claim fails as a matter of law.

Euromodas, 368 F.3d at 17-18 (parallel citations omitted). Moreover, "conduct that is 'as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.'" Id. at 17 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986)).[2]

Here, Goss's attempt to enforce the patents-in-suit is at least as consistent with independent action as it is with concerted action with Heildelberger. Goss is the assignee of three seemingly valuable patents, two of which were already being enforced through litigation, by HWS, at the time Goss International Corp. acquired HWS from Heidelberger. HWS, and then Goss, hardly needed encouragement from Heidelberger to continue pursuing that ongoing infringement action. Moreover, MAN Roland does not even hint at the possible particulars of an agreement between Heidelberger and Goss regarding Goss's enforcement of the patents-in-suit. Nor does MAN Roland suggest how Goss's pursuit of this litigation could possibly amount to

---

[2] Because a conspiracy under section 1 of the Sherman Act is proved in the same way as a conspiracy under section 2, see Jessup v. Am. Kennel Club, Inc., 61 F. Supp. 2d 5, 10 (S.D.N.Y. 1999), the following analysis applies to both conspiracy theories advanced in MAN Roland's fourth counterclaim.

concerted action, given that Goss is the sole and exclusive assignee of the patents-in-suit, leaving Heidelberger no role whatever in any enforcement action.  In short, Goss's decision to enforce its patents (or continue enforcement action already initiated) is hardly sufficient to support a reasonable inference of a conspiracy between Goss and Heidelberger, even in light of Heidelberger's fifteen-percent stake in Goss International Corp.

MAN Roland's "bare bones" conspiracy claims are probably insufficient to survive a Rule 12(b)(6) motion.  See Estate Construction Co. v. Miller & Smith Holding Co., 14 F.3d 213, 221 (4th Cir. 1994) ("Dismissal of a '"bare bones" allegation of antitrust conspiracy without any supporting facts is appropriate.'") (quoting Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 180 (3d Cir. 1988)).  In any event, MAN Roland has not produced or identified any evidence that would tend to exclude the possibility of independent action by Goss, which entitles Goss to summary judgment on MAN Roland's fourth counterclaim.

MAN Roland, seemingly acknowledging the lack of factual support for its conspiracy claims, moves for relief under Rule 56(f).  While Rule 56(f) is to be applied generously, see

15

Resolution Trust Corp. v. North Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994), a party seeking relief under Rule 56(f) "must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist' and 'indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'"  C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 44 (1st Cir. 1998) (quoting Resolution Trust, 22 F.3d at 1203).  In other words, "a plaintiff's speculative assertions that the defendant has unspecified facts in its possession necessary for the plaintiff to develop its legal theories coupled with conclusory statements that discovery should be commenced are 'entirely inadequate to extract the balm of Rule 56(f).'"  C.B. Trucking, 137 F.3d at 45 (quoting Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 989 (1st Cir. 1988)).

   Here, MAN Roland offers nothing more than speculative assertions about possible evidence in the possession of Heidelberger and/or Goss.  Given the implausibility of its unsupported theory that Goss conspired with Heidelberger to enforce patents in which Heidelberger held no interest, and its lack of a plausible basis to believe that facts "probably exist" to support that theory, MAN Roland's Rule 56(f) motion (document

no. 201) is **denied**, and Goss's motion for partial summary judgment (document no. 132) is **granted** with respect to the fourth counterclaim.

Finally, Goss's entitlement to summary judgment on the fifth counterclaim will be discussed in a separate order, pertaining to Heidelberger's four motions for summary judgment (document nos. 130, 132, 139, and 140).

## Conclusion

For the reasons given, the motions for summary judgment presented in document nos. 75, 97, and 117 are all denied; the motions for summary judgment presented in document no. 153 is granted; the motion for summary judgment presented in document no. 155 is granted in part (as to MAN Roland's fourth and sixth counterclaims), and the motion for summary judgment presented in document no. 146 is moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 2, 2006

17

cc: Daniel E. Will, Esq.
    Hugh T. Lee, Esq.
    Richard S. Gresalfi, Esq.
    Georg C. Reitboeck, Esq.
    Mark A. Hannemann, Esq.
    Michael J. Lennon, Esq.
    T. Cy Walker, Esq.
    Danielle L. Pacik, Esq.
    Jonathan M. Shirley, Esq.
    Alfred H. Hemingway, Jr., Esq.
    Irvin D. Gordon, Esq.
    Martin B. Pavane, Esq.
    Michael J. Songer, Esq.
    Shari R. Lahlou, Esq.
    Sidney R. Bresnick, Esq.
    Teodor J. Holmberg, Esq.
    Richard D. Margiano, Esq.
    John F. Sweeney, Esq.
    Steven F. Meyer, Esq.
    Tony V. Pezzano, Esq.
    Bruce W. Felmly, Esq.
    Seth J. Atlas, Esq.
    Anthony S. Augeri, Esq.