UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Goss International Americas, Inc.,
        Plaintiff

        v.

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
        Defendants

                                        Civil No. 03-cv-513-SM
                                        Opinion No. 2006 DNH 063

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
        Counterclaim Plaintiffs

        v.

Goss International Americas, Inc.
and Heidelberger Druckmaschinen AG,
        Counterclaim Defendants


**O R D E R**


        In document no. 190, MAN Roland moves to compel

Heidelberger, Goss, and Kenyon & Kenyon ("Kenyon")[1] to produce

approximately 500 documents that have been withheld from

discovery based upon assertions of attorney-client and/or

attorney work-product privilege.   Heidelberger and Goss object.


        On December 16, 2005, Heidelberger deposed one of its former

employees, Heins Herbert Baldo Stoltenberg, an attorney who

_____

        [1] Kenyon & Kenyon is both Goss's current trial counsel and
Heidelberger's former U.S. patent counsel.

served as head of Heidelberger's patent department before his retirement.  According to MAN Roland, Heidelberger's questioning of Stoltenberg elicited privileged information and, therefore, effected a broad waiver of Heidelberger's attorney-client privilege regarding the '587, '668, and '680 patent applications as well as two Heidelberger files.[2]  In addition, MAN Roland argues that Goss (and Kenyon) waived its privilege by deliberately producing three privileged documents, two internal Heidelberger "decision sheets"[3] and an affidavit given in 1994 by Heidelberger's pre-Kenyon patent counsel.[4]  MAN Roland also argues, somewhat parenthetically and in a conclusory manner, that Heidelberger, Goss, and Kenyon have waived the pertinent privileges by providing deficient privilege logs.[5]

_____

[2] MAN Roland further contends that because the privilege at issue was/is Heidelberger's to waive, Goss is bound by Heidelberger's waiver.

[3] Those decision sheets, which purportedly contain legal advice given by Stoltenberg and a subordinate to Heildelberger management concerning the prosecution and abandonment of the '587 application, were produced by Goss.

[4] That affidavit, which assertedly discloses legal advice given to Heildelberger concerning the prosecution and abandonment of the '587 application, was produced by Kenyon.

[5] Predictably, Heidelberger counters MAN Roland's claim of privilege-log deficiency by contending that MAN Roland's log was even worse ("Notwithstanding that MAN Roland's own privilege logs suffer to an even larger extent from the same deficiencies . . ."). That sort of argument is neither helpful nor persuasive.

MAN Roland's motion suffers from two principal problems. First, it is far too vague regarding the specific privileged communications Heidelberger, Goss, and Kenyon are alleged to have disclosed.  Rather than saying that Party A disclosed that Attorney X had provided it a particular piece of legal advice, MAN Roland simply cites to entire documents, or multi-page sections of the Stoltenberg deposition, and presumes that the court will identify the privileged material.  Second, the scope of relief MAN Roland seeks is far too broad; if any privilege has been waived, the waiver extends only to communications concerning the prosecution of the '587 application.  Not only is MAN Roland's motion plainly deficient, but the facts of this case (i.e., Goss's status as an assignee of Heidelberger's patents, and as a company once wholly owned by Heidelberger, which is also a party) create all manner of potentially complicated legal issues concerning precisely whose privilege is at stake and who may waive that privilege.  As well, it is not clear from MAN Roland's argument whether Stoltenberg is to be considered an attorney, a client, or both, depending upon who he was communicating with at any given time.  However, there is no need to reach those potentially complicated legal issues.

To begin, neither the Stoltenberg deposition nor the Heidelberger decision sheets appear to disclose any privileged

attorney-client communications, which means that neither
Heidelberger's conduct of the deposition nor Goss's production of
the decision sheets effected a waiver of privilege.  The
attorney-client privilege protects confidential communications
between attorneys and clients seeking legal advice.  United
States v. Bisanti, 414 F.3d 168, 171 (1st Cir. 2005) (citing
Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002)).
The pages of the Stoltenberg deposition cited by MAN Roland
describe few if any communications, and several of those, such as
conversations between Stoltenberg and his subordinate, Mr.
Bogert, do not qualify as attorney-client communications.  And,
as noted above, MAN Roland never really indicates whether
Stoltenberg is a provider of legal advice to his employers or his
employers' representative in receiving legal advice from Kenyon.
The Heidelberger decision sheets are cryptic at best, and MAN
Roland does not adequately explain how they reflect or embody a
specific confidential communication between a particular attorney
and client.

    All that remains is MAN Roland's contention that Kenyon's
production of the Tarolli affidavit effected a broad waiver of
Heidelberger's and/or Goss's attorney-client privilege with
respect to any communications pertaining to the prosecution of
the '587, '668, and '660 patent applications.  First some

4

background.  During the late 1980s and early 1990s, Thomas
Tarolli of Tarolli, Sundheim & Covell prosecuted patents for
Harris Graphics Corporation ("HGC") which, after a series of
corporate acquisitions and name changes, became Goss.  In 1989,
Tarolli filed the '587 application.  On February 27, 1991, the
PTO issued a final rejection of that application.  On April 2,
1991, Tarolli sent HGC's patent administrator, Peter Loftus, a
letter in which he informed Loftus that HGC "might want to
consider letting the application lapse."  (Pezzano Decl.
(document no. 240), Ex. C (Tarolli Aff.), ¶ 6.)  On January 10,
1994, Tarolli executed an affidavit in which he described the
content of the April 2, 1991, letter to Loftus.  The record is
silent regarding the context in which Tarolli offered the 1994
affidavit.  At some point during discovery in this case, Kenyon
(which replaced Tarolli's firm as the U.S. patent prosecutor for
HGC/Heidelberg Harris) produced Tarolli's 1994 affidavit.

    As a preliminary matter, and notwithstanding MAN Roland's
contention to the contrary (see MAN Roland's Mem. (document no.
190, attach. 1) at 5), it does not appear that Kenyon disclosed
any confidential information.  It did not produce the letter from
Tarolli to Loftus, which arguably contained legal advice.
Rather, Kenyon produced Tarolli's affidavit, which described the
letter to Loftus.  Any disclosure of confidential information was

effected by Tarolli's 1994 affidavit, not by Kenyon's production
of that affidavit ten years later.

Moreover, MAN Roland has failed to demonstrate its
entitlement to a broad subject-matter waiver of the counterclaim-
defendants' attorney-client privilege.  "Virtually every reported
instance of an implied waiver extending to an entire subject
matter involves a judicial disclosure, that is, a disclosure made
in the course of a judicial proceeding."  In Re Keeper of Records
(Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 24
(1st Cir. 2003) (citing von Bulow v. von Bulow (In re von Bulow),
828 F.2d 94, 103 (2d Cir. 1987)).  Waiver regarding an entire
subject matter is necessary after judicial disclosure because, in
that setting, "the likelihood of prejudice looms: once a litigant
chooses to put privileged communications at issue, only the
revelation of all related exchanges will allow the truth-seeking
process to function unimpeded."  In re Keeper of Records, 348
F.3d at 24.  In other words, "[w]here a party has not thrust a
partial disclosure into ongoing litigation, fairness concerns
neither require nor permit massive breaching of the attorney-
client privilege."  Id. at 25 (emphasis added).

Here, MAN Roland has not demonstrated that either
Heidelberger or Goss has thrust a partial disclosure of

6

privileged communication into this litigation.  If, indeed, the actual disclosure of Tarolli's advice was effected by means of the 1994 affidavit, that disclosure can hardly be considered an act by Heidelberger or Goss undertaken for advantage in <u>this</u> litigation, twelve years later.  Or if the recent production of the 1994 affidavit – perhaps best characterized as the disclosure of a disclosure of a privileged communication – even qualifies as a disclosure of confidential attorney-client communications, Kenyon's production of a document in response to a discovery request is not the kind of litigation use that results in an implied waiver of privilege.  See <u>In re von Bulow</u>, 828 F.2d at 103.  In order to waive the privilege through disclosure, the disclosing party must also rely upon the disclosed communication in some way, but MAN Roland has failed completely to identify any way in which Heidelberger or Goss has used any confidential information disclosed in the 1994 affidavit "as both 'a sword' and 'a shield'" or in any other prejudicial manner.  <u>See id.</u> (citing <u>In re Sealed Case</u>, 676 F.2d 793, 809 n.54 (D.C. Cir. 1982)).

The foregoing analysis applies with equal force to the Stoltenberg deposition and the Heidelberger decision sheets; even if they do disclose confidential attorney-client communications, MAN Roland has not demonstrated any use of those materials by

7

Heidelberger or Goss that would support a claim of implied
subject matter waiver.

Two final points.  MAN Roland argues in a conclusory way
that Heidelberger and Goss should be denied the benefit of
attorney-client privilege due to the vagueness of their privilege
logs.  Without citation to specific substandard entries, that
blanket argument is not persuasive, and the court is not inclined
to comb through the privilege logs, line by line, to determine
which entries pass muster and which do not.  MAN Roland also
argues that Kenyon waived the privilege held by Heidelberger
and/or Goss by producing an inadequate privilege log that, among
other things, asserted attorney client and/or work-product
privilege for each of the items it listed.  Again, the court is
not inclined to comb through that log, item by item, to determine
its adequacy on the strength of a diffuse general allegation.

For the reasons given, MAN Roland's motion to compel
(document no. 190) is denied.

**SO ORDERED.**

_____

Steven J. McAuliffe
Chief Judge

June 2, 2006

```
cc:  Daniel E. Will, Esq.
     Hugh T. Lee, Esq.
     Richard S. Gresalfi, Esq.
     Georg C. Reitboeck, Esq.
     Mark A. Hannemann, Esq.
     Michael J. Lennon, Esq.
     T. Cy Walker, Esq.
     Danielle L. Pacik, Esq.
     Jonathan M. Shirley, Esq.
     Alfred H. Hemingway, Jr., Esq.
     Irvin D. Gordon, Esq.
     Martin B. Pavane, Esq.
     Michael J. Songer, Esq.
     Shari R. Lahlou, Esq.
     Sidney R. Bresnick, Esq.
     Teodor J. Holmberg, Esq.
     Richard D. Margiano, Esq.
     John F. Sweeney, Esq.
     Steven F. Meyer, Esq.
     Tony V. Pezzano, Esq.
     Bruce W. Felmly, Esq.
     Seth J. Atlas, Esq.
     Anthony S. Augeri, Esq.
```