```
               UNITED STATES DISTRICT COURT

                 DISTRICT OF NEW HAMPSHIRE


Goss International Americas, Inc.,
     Plaintiff

     v.

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Defendants
                                          Civil No. 03-cv-513-SM
                                          Opinion No. 2006 DNH 086
MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Counterclaim Plaintiffs

     v.

Goss International Americas, Inc.
and Heidelberger Druckmaschinen AG,
     Counterclaim Defendants
```

## O R D E R

Document no. 173 is MAN Roland's second motion for summary judgment on its third counterclaim, which seeks a declaratory judgment of unenforceablity based upon a variety of inequitable conduct.[1]  At issue here is MAN Roland's claim that material misrepresentations were made and material information was withheld during the prosecution of the '587 application, which is listed as an ancestor application in each of the three patents-

---

[1] MAN Roland's previous motion (document no. 145) is denied in a contemporaneous order.

in-suit.  Specifically, MAN Roland asserts that in a May 27, 1991, petition to revive, Heidelberg Harris, Inc. ("Heidelberg Harris") falsely represented that the '587 application had been abandoned unintentionally rather than on purpose, and failed to provide the PTO with material evidence demonstrating the intentional abandonment of that application.

**The Applicable Law**

A. Inequitable Conduct

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." Atofina v. Great Lakes Chem. Corp., 441 F.3d 991, 1001 (Fed. Cir. 2006) (quoting Digital Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006)).  Both of these elements, intent and materiality, must be proven by clear and convincing evidence.  M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 439 F.3d 1335, 1340 (Fed. Cir. 2006) (citing J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d 1553, 1559 (Fed. Cir. 1984)).

B. Revival of Abandoned Patent Applications

At the time the '587 application was revived, 37 C.F.R. § 1.137(b) allowed for "[a]n application unintentionally abandoned for failure to prosecute . . . [to] be revived as a pending application if the delay was unintentional."  While the regulation pertaining to <u>unavoidable</u> abandonment required a petitioner to make "a showing of the causes of the delay," 37 C.F.R. § 1.137(a), the regulation pertaining to <u>unintentional</u> abandonment required only "[a] statement that the abandonment was unintentional," § 1.137(b), and did not require a showing of unintentionality.

In <u>In re Maldague</u>, 10 U.S.P.Q.2d (BNA) 1477 (Comm'r Pat. & T.M. 1988), the Commissioner of the PTO denied a petition to revive and described a set of circumstances that did not constitute unintentional abandonment:

> Petitioner asserts that Mr. Roodhooft's June 30, 1986 decision, although formed with reasonable care and diligence, was in error.  A distinction must be made between a mistake in fact, which may form the basis for a holding of unintentional abandonment under 37 CFR 1.137(b), and the arrival at a different conclusion after reviewing the same facts a second time.  An intentional act is not rendered unintentional when an applicant reviewing the same facts changes his mind as to the appropriate course of action to pursue.  An application abandoned as a result of a deliberative, intentional course of action after comparing the

>  claimed invention with the prior art, does not amount
>  to an unintentional abandonment within the meaning of
>  37 CFR 1.137(b).

Id. at 1478.  A similar result was reached In re Application of G, 11 U.S.P.Q.2d (BNA) 1378 (Comm'r. Pat. & T.M. 1989), in which the Commissioner further explained:

>  A deliberate act is not rendered "unintentional" when
>  an applicant or assignee reviews the same facts (e.g.,
>  patentability of the claims) a second time which
>  changes their minds as to the appropriate course of
>  action to pursue.  An application abandoned as a result
>  of a deliberate, intentional course of action after
>  comparing the claimed invention with the prior art,
>  does not amount to an unintentional abandonment within
>  the meaning of 35 U.S.C. 41(a)7 and 37 CFR 1.137(b).

Id. at 1380.

## Factual Background

The relevant circumstances involve several people and a series of events.  The people are: Thomas Tarolli, an attorney with the law firm that initially prosecuted the '587 application for Harris Graphics Corporation;[2] ("Harris Graphics"); Peter Loftus, Harris Graphics' patent administrator; Roland T.

---

[2] Harris Graphics, a predecessor to Goss, was the assignee of the invention claimed in the '587 application.

Palmatier, director of product development at Heidelberg Harris;[3] Valentin Bogert, the Heidelberger Druckmaschinen AG ("Heidelberger") patent engineer directly responsible for the '587 application; Heins Stoltenberg, the head of Heidelberger's patent department; Wolfgang Pfizenmeier, the Heidelberger board member to whom Stoltenberg reported; Robert Mayer, an attorney with Kenyon & Kenyon, the law firm that filed the petition to revive the '587 application; Patrick Birde, the Kenyon & Kenyon attorney who actually signed and filed the petition to revive. The events at issue include the following:

February 27, 1991: The PTO issued a Final Office Action ("FOA") rejecting the last two pending claims of the '587 application[4] as obvious in view of the prior art. (MAN Roland's Mem. of Law (document no. 174), Ex. X-2.) In the FOA, Harris Graphics was notified of a three-month "shortened statutory period for response" that gave it until May 27, 1991, to respond to the rejection of the '587 application. (Id.)

---

[3] Heidelberg Harris was a successor of Harris Graphics, a predecessor of Goss, and a subsidiary of Heidelberger.

[4] The '587 application claimed a printing press.

April 2, 1991:  Tarolli writes to Loftus, informing him of the rejection, and stating: "Since we are in the process of filing a new application to cover the blanket in conjunction with American Roller, we will allow this application to lapse.  Please let me know if you do not agree."  (Id., Ex. X-3.)

May 15, 1991:  The application referred to in the Tarolli letter, the '668 application,[5] is filed, with Heidelberg Harris as its assignee.  (Id., Ex. X-4.)  That application, labeled internally as "HEM 90/142," was designated as a continuation-in-part of the '587 application.  (Id.)

May 27, 1991:  The shortened statutory period for responding to the February 27 rejection of the '587 application ends.

June 25, 1991:  Bogert drafts a "decision-sheet" regarding the '587 application ("Bogert decision-sheet"), directed to Loftus, which includes the notation: "DO NOT CONTINUE WITH APPLICATION – REPLACED BY HEM 90/142."  (Id., Ex. X-6.)

---

[5] The '668 application claimed only a printing blanket.

July 31, 1991:  Bogert meets with Loftus and Palmatier to discuss whether or not to continue with the '587 application. Loftus signs the Bogert decision-sheet and Palmatier writes on it: "Stop – do not pursue."  (Id.)  Bogert subsequently confers with Tarolli.

August 13, 1991:  Loftus distributes a memo to R.A. Brown[6] (with copies to others) titled "Sunday Press Invention Status," which includes what appears to be a computer-generated report that details "the status of the 90 inventions resulting from the N-954C, PFF-2, NFF, and Telecolor 2 phases of the Sunday Press program," and contains the notation: "DROPPED DUE TO PRIOR ART – SEE HEM-90/142 FOR BLANKET CONST."  (Id., Ex. X-7.)  The source of the information contained in the status report is not clear from the record.

August 26, 1991:  Bogert writes, in the "legal opinion" section of a document titled "Heidelberg Decision Sheet 1991," concerning the '587 application: "Object will now be pursued further in HEM 90/142."  (Id., Ex. X-9.)

---

[6] MAN Roland does not identify R.A. Brown.

<u>September 2, 1991</u>:  Stoltenberg writes "drop" or "let it drop" in the "recommendation" section of the Heidelberg Decision Sheet.  (<u>Id.</u>)

<u>September 5, 9, and 17, 1991</u>:  Three members of Heidelberger's Technical Department initial the "comment" section of the Heidelberg Decision Sheet.  (<u>Id.</u>)

<u>September 30, 1991</u>:  Pfizenmeier writes "drop" in the "decision" section of the Heidelberg Decision Sheet.  (<u>Id.</u>)

<u>October 4, 1991</u>:  Tarolli receives a PTO Notice of Abandonment regarding the '587 application.  (<u>Id.</u>, Ex. X-10.)

<u>October 18, 1991</u>:  After reviewing the '587 application and the prior art cited against it and conferring with Heidelberger engineers, Stoltenberg writes on the Heidelberg Decision Sheet "should be corrected" and Pfizenmeier scratches out his previous notation "drop" and writes "retracted October 18, 1991."  (<u>Id.</u>, Ex. X-9.)

<u>Late October 1991</u>:  Stoltenberg sends Bogert to discuss the revival of the '587 application with Mayer.  Mayer proposes

refiling the '587 application as a new application and filing a petition to revive the original '587.

April 7, 1992:  Mayer files the '680 application,[7] as a continuation-in-part of '668 application.  (Id., Ex. X-11.)

May 27, 1992:  On the last day to do so, Birde files a petition to revive the '587 application, stating that its abandonment "was unintentional."  (Id., Ex. X-12.)

January 1994:  Tarolli produces, at the request of Kenyon & Kenyon, an affidavit discussing the abandonment of the '587 application.  (Id., Ex. X-13.)

In MAN Roland's view, Heidelberger acted inequitably in two ways: (1) by falsely stating, in the petition to revive, that the abandonment of the '587 application was unintentional; and (2) failing to provide the PTO with: (a) the April, 2, 1991, Tarolli letter; (b) the June 25, 1991, Bogert decision-sheet; (c) the August 13, 1991, "Sunday Press Invention Status Report;" (d) the Heidelberg Decision Sheet; and (e) the 1994 Tarolli affidavit.

---

[7] Like the '587 application, the '680 claimed a printing press.

**Discussion**

To be entitled to summary judgment, MAN Roland would have to show that the undisputed factual record contains clear and convincing evidence that Heidelberg Harris and/or Heidelberger: (1) abandoned the '587 application intentionally rather than unintentionally; (2) knowingly misrepresented the circumstances of the abandonment of that application to the PTO; and (3) did so with intent to mislead or deceive the examiner.  MAN Roland has not met its burden.

First of all, it is not at all clear (and it seems rather unlikely), based on the recited facts and relevant law, that the '587 application was abandoned intentionally.  To be sure, Tarolli advised allowing the application to lapse, and Bogert, Loftus, Palmatier, Stoltenberg, and Pfizenmeier all indicated concurrence with that advice.  However, both Tarolli's letter to Loftus and Bogert's decision-sheet notation – the only contemporaneous explanatory writings on the matter by identified authors – indicate that while the '587 <u>application</u> was to be abandoned, its <u>subject matter</u> was not.  Rather, Tarolli and Bogert appear to have believed that the subject matter of the '587 application was covered in the '668 application, which was

filed approximately two weeks before the end of the period for replying to the February 27, 1991, rejection of the '587.

On the other hand, the only documentary evidence of a contrary motivation for abandoning the '587 application, the notation "DROPPED DUE TO PRIOR ART," is unattributed, appears in a memorandum to an unidentified recipient, was written well after the May 27, 1991, deadline for responding to the FPO,[8] and also refers to the explanation previously stated by Tarolli and Bogert, i.e., that the '587 application could be abandoned because the '587 subject matter was included in the '668 application.  If anything, the undisputed facts tilt toward Heidelberger's and Goss's position; they certainly do not contain clear and convincing evidence in favor of MAN Roland's position.

Moreover, the facts of this case fall outside the limits of the rule stated in Maldague and Application of G.  In each of those cases, a single decision maker twice considered the same body of information and reached a different conclusion on

---

[8] Given that the '587 application went abandoned on May 27, 1991, the day on which the shortened statutory period for response expired, the August 13, 1991, report is, at best, an after-the-fact characterization of the abandonment, rather than contemporaneous evidence of the decision-making process.

11

reconsideration. The rule of Maldague and Application of G is that a different conclusion resulting from a second examination of the same information does not make the first conclusion a mistake of fact for purposes of establishing that the abandonment of a patent application, based upon the first conclusion, was unintentional.

Here, MAN Roland has not produced clear and convincing evidence that the decision to drop the '587 application was "a deliberative, intentional course of action after comparing the claimed invention with the prior art." Maldague, 10 U.S.P.Q.2d at 1478. What evidence has been presented suggests the decision was based upon an erroneous comparison of the pending '587 application and the '668 application. And while the comparison of an invention to the prior art involves a legal analysis, the determination of whether one application includes all the claims of another application, when both are filed by the same entity, is a question of fact.

Moreover, MAN Roland has produced no evidence that Bogert, Stoltenberg, or Pfizenmeier ever concluded that the '587 subject matter was not patentable; both the Bogert decision-sheet and the Heidelberg Decision Sheet note that the '587 subject matter was

being pursued in the '668 application – indicating a belief that the '587 subject matter was patentable.  And those documents contain no mention of the prior art and no indication that anyone involved in prosecuting the '587 application believed its subject matter to be unpatentable due to prior art.  The only mention of the patentability of the '587 subject matter appears in the August 13, 1991, Loftus memorandum, which does not list Bogert, Stoltenberg, or Pfizenmeier as recipients.  Thus, when Stoltenberg and Pfizenmeier made their revisions to the Heidelberg Decision sheet (i.e., retracting their recommendations to drop the application), they could not have been changing their minds about the patentability of the '587 subject matter.  See Application of G, 11 U.S.P.Q.2d at 1380.

If Stoltenberg or Pfizenmeier had analyzed the '587 application in view of the prior art and concluded that the '587 subject mater was not patentable in view of the prior art, and then performed the same comparison a month later only to reach a different conclusion, the second conclusion would not make the first one a mistake of fact.  See Maldague, 10 U.S.P.Q.2d at 1478; Application of G, 11 U.S.P.Q.2d at 1380.  But MAN Roland has not produced clear and convincing evidence to support any such scenario.  MAN Roland has not even produced

13

evidence that Stoltenberg or Pfizenmeier ever compared the '587 application and the '668 application prior to recommending that the '587 application be dropped.  Thus, the record simply does not support MAN Roland's argument that Heidelberg Harris's petition to revive resulted from a change of mind rather than a mistake of fact.

Because MAN Roland has failed to provide clear and convincing evidence that the '587 application was abandoned intentionally, it has, necessarily, failed to provide clear and convincing evidence that Heidelberg Harris's statement of unintentional abandonment was a knowing misrepresentation. Similarly, because the documents MAN Roland says Heidelberg Harris should have provided to the PTO contain, at most, a mere hint of intentional abandonment, <u>i.e.</u>, the unattributed notation in the August 13, 1991, status report, it was hardly inequitable of Heidelberg Harris not to provide those documents, especially since the relevant regulation pointedly did not require petitioners to make a showing of unintentional abandonment.

MAN Roland has not produced clear and convincing evidence that Heidelberg Harris acted inequitably in petitioning for revival of the '587 application.  Accordingly, its motion for

14

summary judgment (document no. 173) is denied.  Moreover, because the motion for summary judgment presented in document no. 178 is premised upon a favorable ruling on the motion presented in document no. 173, the motion presented in document no. 178 is, necessarily denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 31, 2006

cc:  Daniel E. Will, Esq.
     Hugh T. Lee, Esq.
     Richard S. Gresalfi, Esq.
     Georg C. Reitboeck, Esq.
     Mark A. Hannemann, Esq.
     Michael J. Lennon, Esq.
     T. Cy Walker, Esq.
     Jonathan M. Shirley, Esq.
     Alfred H. Hemingway, Jr., Esq.
     Irvin D. Gordon, Esq.
     Martin B. Pavane, Esq.
     Michael J. Songer, Esq.
     Shari R. Lahlou, Esq.
     Sidney R. Bresnick, Esq.
     Teodor J. Holmberg, Esq.
     Richard D. Margiano, Esq.
     John F. Sweeney, Esq.
     Steven F. Meyer, Esq.
     Tony V. Pezzano, Esq.
     Bruce W. Felmly, Esq.
     Seth J. Atlas, Esq.
     Anthony S. Augeri, Esq.