UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Goss International Americas, Inc.</u>,
    Plaintiff

    v.

<u>MAN Roland, Inc. and</u>
<u>MAN Roland Druckmaschinen AG</u>,
    Defendants
                                 Civil No. 03-cv-513-SM
                                 Opinion No. 2006 DNH 087

<u>MAN Roland, Inc. and</u>
<u>MAN Roland Druckmaschinen AG</u>,
    Counterclaim Plaintiffs

    v.

<u>Goss International Americas, Inc.</u>
<u>and Heidelberger Druckmaschinen AG</u>,
    Counterclaim Defendants

<h2 style="text-align:center;"><u>O R D E R</u></h2>

MAN Roland moves for summary judgment (document no. 145) on its third counterclaim, which seeks declaratory judgment that the patents-in-suit are unenforceable due to Heidelberger's inequitable conduct during their prosecution.  Heidelberger and Goss both object.  For the reasons given, MAN Roland's motion is denied.

## The Applicable Law

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." Atofina v. Great Lakes Chem. Corp., 441 F.3d 991, 1001 (Fed. Cir. 2006) (quoting Digital Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006)).  More specifically:

> Patent applicants and those substantively involved in the preparation or prosecution of a patent application owe a "duty of candor and good faith" to the PTO.  37 C.F.R. § 1.56(a) (2004); see also Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995).  A breach of this duty may constitute inequitable conduct, which can arise from a failure to disclose information material to patentability, coupled with an intent to deceive the PTO.  Molins, 48 F.3d at 1178.  Both of these elements, intent and materiality, must be proven by clear and convincing evidence.  J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc., 747 F.2d 1553, 1559 (Fed. Cir. 1984).  "[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct."  Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 552 (Fed. Cir. 1990).  "Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent."  Hebert v. Lisle Corp., 99 F.3d 1109, 1116 (Fed. Cir. 1996).

M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 439 F.3d 1335, 1339–40 (Fed. Cir. 2006).

"Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false information, coupled with an intent to deceive." <u>Molins</u>, 48 F.3d at 1178 (citing <u>J.P. Stevens & Co. v. Lex Tex, Ltd.</u>, 747 F.2d 1553, 1559 (Fed. Cir. 1984)).  Moreover:

> The inequitable conduct analysis is performed in two steps comprising first, a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all the circumstances to determine whether the applicant's conduct is <u>so culpable</u> that the patent should be held unenforceable.

<u>Ferring B.V. v. Barr Labs.</u>, Inc. 437 F.3d 1181, 1186 (Fed. Cir. 2006) (quoting <u>Digital Prods., Inc. v. Total Containment, Inc.</u>, 329 F.3d 1358, 1362–63 (Fed. Cir. 2003) (internal quotation marks omitted)).  When "balancing the levels of materiality and intent, '. . . a greater showing of one factor allow[s] a lesser showing of the other.'" <u>Digital Control</u>, 437 F.3d at 1313 (quoting <u>Union Pac. Res. Co. v. Chesapeake Energy Corp.</u>, 236 F.3d 684, 693 (Fed. Cir. 2001)).

Turning to the question of materiality, information is material to patentability when:

3

it is not cumulative to information already of record
or being made of record in the application, and

(1) It establishes, by itself or in combination with
other information, a <u>prima facie</u> case of
unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position
the applicant takes in:
(I) Opposing an argument of unpatentablity relied
on by the Office, or
(ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b) (emphasis in original).  A <u>prima facie</u> case

of unpatentability is established when the information compels a

conclusion that a claim is unpatentable (1) by a preponderance of

the evidence, (2) with each claim term given its largest

reasonable construction, and (3) before consideration of evidence

which may be submitted in an attempt to establish patentability.

<u>Id.</u>


Because the court has already ruled on Heidelberger's motion

for summary judgment on MAN Roland's <u>Walker Process</u> fraud claims,

it bears noting that inequitable conduct sufficient to render a

patent unenforceable "includes types of conduct less serious than

[the] 'knowing and willful' fraud" necessary to establish a

<u>Walker Process</u> fraud claim.  <u>Nobelpharma AB v. Implant</u>

<u>Innovations, Inc.</u>, 141 F.3d 1059, 1069 (Fed. Cir. 1998).

Finally, "[a]lthough it is not impermissible to grant
summary judgment of inequitable conduct, [the Court of Appeals
for the Federal Circuit] 'urges caution' in making an inequitable
conduct determination at the summary judgment stage." Eagles
Tool Warehouse, 439 F.3d at 1340 (quoting Paragon Podiatry Lab.,
Inc. v. KLM Labs, Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993)).

### MAN Roland's Claim

In its supporting memorandum of law, MAN Roland argues that
during the prosecution of the patents-in-suit, Heidelberger, with
the intention of misleading the PTO: (1) withheld Walenski and JP
'165; buried its disclosure of Ross '286; and misrepresented the
teaching of Ross '286; (2) withheld material information from EPO
and JPO proceedings, including statements it made to those
foreign patent offices and decisions rendered by those offices
concerning Walenski, JP '165, and Ross '286; (3) failed to
disclose the existence of material foreign patent proceedings;
(4) failed to properly disclose the existence of its litigation
against Mitsubishi; and (5) withheld material information from
the Mitsubishi litigation in the form of evidence and arguments
from that case as well as several decisions issued by the trial
court prior to final judgment.

A. Walenski

MAN Roland argues that because Heidelberger once represented to the EPO that the Walenski textbook on offset printing plus a European counterpart to Tittgemeyer '048 were the closest prior art to Heidelberger's EP '145, Walenski was material prior art to the prosecution of the patents-in-suit, and that Heldelberger's non-disclosure of Walenski to the PTO amounted to inequitable conduct rendering the three patents-in-suit unenforceable.  MAN Roland further argues that Heidelberger engaged in inequitable conduct by failing to disclose both the statements it made to the EPO concerning Walenski and the EPO's discussion of Walenski. Heidelberger counters that it had no duty to disclose Walenski because that reference was cumulative of other references before the examiner, and, therefore, was not material.  Goss also argues that Walenski is not material.

MAN Roland bears the burden of proving materiality (and intent to deceive) by clear and convincing evidence.  MAN Roland's entire argument for the materiality of Walenski comes down to the EPO's reliance on Walenski in its decision to revoke Heidelberger's EP '145, and Heidelberger's statements to the EPO concerning Walenski.  That is, MAN Roland does not explain why Walenski is non-cumulative to other references disclosed by

6

Heidelberger, and, either establishes a prima facie case of unpatentability, or refutes a position that Heidelberger took in opposing an argument for unpatentability made by the examiner, or in supporting its own argument for patentability.  <u>See</u> 37 C.F.R. § 1.56(b).  That is not enough for MAN Roland to carry its burden of establishing the materiality of Walenski.

The two cases MAN Roland relies on to support its argument concerning Walenski are not to the contrary.  First, <u>J.P. Stevens</u> does not stand for the proposition that reliance by a foreign patent office establishes the materiality of a prior art reference.  Rather, the discussion from <u>J.P. Stevens</u> that MAN Roland quotes in its brief comes from a section of the opinion pertaining to intent to deceive.  <u>See</u> 747 F.2d at 1566.  In <u>Molins</u>, the Federal Circuit noted that the district court based a finding of materiality, in part, on a patent applicant's representations to foreign patent offices concerning the materiality of a particular reference, as well as the opinions of foreign patent examiners.  48 F.3d at 1180.  But in that case, the trial court also compared the teachings of the relevant application to those of the prior art references – a step not taken by MAN Roland in its motion for summary judgment.  <u>See</u> <u>id.</u> Moreover, in affirming the trial court, the Federal Circuit's opinion did not rely on the evidence from foreign prosecutions:

> On the evidence presented, <u>even that independent of the admissions in the foreign prosecution</u>, we cannot say that the court clearly erred in finding that a reasonable examiner would have considered Wagenseil important in deciding the patentability of the pending system 24 claims in the U.S. application.

<u>Id.</u> (emphasis added).  Thus, just as <u>J.P. Stevens</u> does not stand for the proposition that reliance by a foreign patent office establishes the materiality of a prior art reference, <u>Molins</u> does not stand for the proposition that statements about a prior art reference by a U.S. applicant made during a foreign prosecution establish the materiality of such a reference in a United States prosecution.

Because MAN Roland has not established the materiality of Walenski, it is not entitled to judgment as a matter of law that Heidelberger's failure to disclose Walenski amounted to inequitable conduct rendering the patents-in-suit unenforceable.

<u>B. JP '165</u>

MAN Roland contends that because JP '165 teaches a printing blanket with an intermediate compressible layer, that reference was material prior art, the non-disclosure of which renders the patents-in-suit unenforceable.  Heidelberger counters that JP '165 was not material because it is cumulative of U.K. '932 and

Shrimpton '541, both of which were before the examiner.  Goss
argues that MAN Roland has failed to demonstrate that
Heidelberger knew about 'JP 165 during the prosecution of the
patents-in-suit and that JP '165 is cumulative of other prior art
of record and, therefore, not material.

As with its inequitable conduct claim concerning Walenski,
MAN Roland does not explain how JP '165 is non-cumulative to
other references disclosed by Heidelberger, and, either
establishes a prima facie case of unpatentability, or refutes a
position that Heidelberger took in opposing an argument for
unpatentability made by the examiner, or supports its own
argument for patentability.  <u>See</u> 37 C.F.R. § 1.56(b).  Thus, MAN
Roland has failed to meet its burden of demonstrating that it is
entitled to judgment as a matter of law on that portion of its
inequitable conduct claim pertaining to Heidelberger's failure to
disclose JP '165.[1]

<u>C. Ross '286</u>

---

[1] In addition, to the extent MAN Roland addresses the
content of JP '165 at all, it seems to argue that JP '165 teaches
a tubular printing blanket, a position the court rejected in a
previous order.

Man Roland contends that Heidelberger's allegedly untimely disclosure of Ross '286, "hidden" behind a Federal Circuit decision, amounted to a failure to disclose that rose to the level of inequitable conduct sufficient to render the patents-in-suit unenforceable.  Heidelberger counters that it adequately disclosed Ross '286 to the PTO.  Goss argues that Heidelberger adequately disclosed Ross '286 and that, in any event, Ross '286 is cumulative of other prior art of record.

In a previous order, the court granted Heidelberger judgment as a matter of law that neither the timing nor the manner of its disclosure of Ross '286 to the PTO gave rise to liability for Walker Process fraud.  Here, of course, while the same conduct is at issue, it is MAN Roland moving for summary judgment, and the legal theory (inequitable conduct versus Walker Process fraud) is different.  While the threshold of culpability for inequitable conduct is lower than it is for Walker Process fraud, see Nobelpharma, 141 F.3d at 1069, the Federal Circuit urges trial courts to use caution in granting summary judgment with respect to inequitable conduct.  See Eagles Tool Warehouse, 439 F.3d at 1340.  Such caution is plainly warranted here in that Heidelberger did affirmatively disclose Ross '286, and did not do so in a misleading manner, which significantly – if not fatally –

10

impairs MAN Roland's ability to prove intent to mislead the PTO. Because MAN Roland is not entitled to judgment as a matter of law on its inequitable conduct counter claim as it relates to Ross '286, its motion for summary judgment is denied as to that portion of its claim.

D. EPO and JPO Proceedings

MAN Roland contends that Heidelberger committed inequitable conduct by failing to disclose either the existence of certain EPO and JPO proceedings or information generated during the course of those proceedings.  The "information" to which MAN Roland refers consists of statements Heidelberger made to the EPO about the teaching of Ross '286 and Walenski, the decision of the EPO to revoke Heidelberger's EP '145 based in part on Walenski, and the decision of the JPO to cancel fifteen claims of Heidelberger's JP '213 based in part on JP '165.  Heidelberger counters that it had no obligation to disclose any of the information identified by MAN Roland because none of it was material.  Goss makes a similar argument.

As a preliminary matter, there appears to be no legal basis for MAN Roland's argument that Heidelberger had an obligation to disclose to the PTO statements it made to foreign patent offices

about the prior art.  While the section of the Manuel of Patent
Examining Procedure ("MPEP") that pertains to information from
related litigation states that applicants are under a duty to
disclose "any assertion that is made during litigation which is
contradictory to assertions made to the examiner," MPEP
§ 2001.06(c), the section pertaining to information resulting
from foreign applications limits the applicant's duty of
disclosure to "material prior art or other information cited or
brought to [its] attention in any related foreign application."
MPEP § 2001.06(c).  Perhaps more pointedly, § 2001.06(c) is
titled "Prior Art Cited in Related Foreign Applications."


     However, even if there were a general duty to disclose
representations and arguments made before foreign patent offices,
MAN Roland would not be entitled to prevail on the facts of this
case.  Because the examiner had Ross '286 before him,
Heidelberger was under no obligation to disclose statements it
may have made to foreign patent offices concerning that
reference; "[t]he examiner was free to reach his own conclusion
. . . based on the prior art in front of him."  Akzo N.V. v. U.S.
Int'l Trade Comm'n, 808 F.2d 1471, 1482 (Fed. Cir. 1986).  And
because MAN Roland has not demonstrated the materiality of
Walenski, it has, necessarily, failed to show that Heidelberger

acted inequitably in failing to disclose any statements it may have made about that reference.

Similarly, MAN Roland has failed to demonstrate that Heidelberger acted inequitably in failing to disclose the existence of the EPO proceeding that resulted in the revocation of EP '145 and the JPO proceeding that resulted in the cancellation of claims in JP '213. MAN Roland correctly points out that a prior rejection of a similar claim by a U.S. patent examiner meets the materiality standard set out in 37 C.F.R. § 1.56(b). See Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1368 (Fed. Cir. 2003). But the year after Dayco was decided, a district court noted "the lack of clear caselaw requiring an applicant to disclose an adverse decision by a foreign patent examiner and the basis for it." Inverness Med. Switz. GmbH v. Acon Labs., Inc., 323 F. Supp. 2d 227, 249 (D. Mass. 2004). And, importantly, in Inverness, the court made clear that the material information at issue was not the EPO revocation decision per se but, rather, the specific combination of four prior art references on which the EPO based the decision to revoke the applicant's patent. Id. That combination of references was material, on the facts of Inverness, because of the large number of prior art references disclosed by the

13

applicant to the PTO and the examiner's specific request of the
applicant for information regarding its European patents.  <u>Id.</u>
Here, because MAN Roland has failed to demonstrate the
materiality of either Walenski or JP '165, it has necessarily
failed to demonstrate that Heidelberger acted inequitably in
failing to inform the examiner about the existence of adverse
foreign proceedings that relied upon those references.

E. Mitsubishi Litigation

        Finally, MAN Roland contends that Heidelberger acted
inequitably in failing to make a full and timely disclosure
concerning its litigation against Mitsubishi Heavy Industries.
In particular, MAN Roland points to Heidelberger's failure to
provide the examiner with the trial testimony of Mitsubishi's
expert concerning the significance of Ross '286,[2] and it further
argues that submission of the Federal Circuit opinion in
<u>Mitsubishi</u>, without more, was fundamentally misleading because
Mitsubishi had failed to move for JMOL in a timely manner, thus
significantly constraining the Federal Circuit's analysis of the

_____

        [2] MAN Roland also appears to fault Heidelberger for failing
to disclose district court orders denying its motion for a
preliminary injunction and Mitsubishi's motion for summary
judgment, as well as the evidence and analysis adduced by
Mitsubishi in support of its unsuccessful summary judgment
motion.

issues raised on appeal.  Heidelberger counters that it made an
adequate disclosure of the Mitsubishi litigation by providing the
name of the case, its docket number, the name of the court in
which it was decided, and a listing of the prior art references
asserted against the patent-in-suit, along with the decision of
the Federal Circuit in that case.  Goss makes a similar argument.

    MAN Roland's strongest support comes from <u>Boehringer</u>
<u>Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.</u>, 68 F. Supp.
2d 508 (D.N.J. 1999).  In <u>Boehringer</u>, the district court was
faced with a patent holder, Boehringer, that was claiming
infringement and requesting a preliminary injunction against the
defendant, Schering.  <u>Id.</u> at 511.  Boehringer's request for an
injunction was denied, based on the court's determination that
Boehringer had failed to demonstrate a likelihood of success in
overcoming Schering's obviousness defense.  <u>Id.</u> at 544.
Nonetheless, the court went on to discuss Schering's argument
that the patent-in-suit was unenforceable due to Boehringer's
inequitable conduct, <u>id.</u>, and determined that Boehringer had not
demonstrated that Schering's inequitable conduct defense lacked
substantial merit.  <u>Id.</u> at 552.

The patent-in-suit in Boehringer was the '563 patent.  Id. at 511.  Boehringer's inequitable conduct consisted of a failure to adequately disclose material information from a pending infringement action against Schering that involved the related '778 patent.  Id. at 547.  At the time of the '563 prosecution, and indeed at the time of the decision reported in Boehringer, the litigation involving the '778 patent had not yet gone to trial, id. at 512, but had resulted in an order denying Boehringer's request for a preliminary injunction and another order denying both parties' motions for summary judgment.  Id. at 511.

During the prosecution of the '563 patent, Boehringer disclosed the existence of the '773 litigation, id. at 549, and the prior art asserted against the '773 patent, id. at 547, but did not disclose Schering's arguments in that litigation, the reports of Schering's experts, or the court's orders denying a preliminary injunction and denying summary judgment.  Id.  In the '563 litigation, Boehringer argued that its disclosure of the existence of the '773 litigation and the prior art from that litigation was sufficient to meet the requirements of 37 C.F.R. § 156(b).  Id. at 549.  The court did not agree.

16

First, the court held that Schering's arguments and expert reports, and its own previous orders, were material to the patentability of the invention claimed in the '563 patent.  Id. at 549–50 (citing Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1258 (Fed. Cir. 1997) ("A patent applicant's duty to disclose is not limited to disclosing prior art.")).  Moreover, the court called the "issue of materiality [one that] can easily be resolved."  Id.  Specifically, the court held:

> there are several arguments raised by Schering and conclusions articulated by this Court in the '778 Patent litigation which satisfy [the prima facie] standard.  For example, the obviousness arguments presented by Schering in Boehringer I which this Court found to present a substantial defense to Boehringer's motion for preliminary injunction was material to the USPO's review of the '563 Patent.  This Court's conclusion in Boehringer I that a substantial issue persisted about the obviousness of the '778 Patent was material to the '563 Patent in that it would have, without consideration of Boehringer's response, compelled a conclusion of unpatentability.

Id. at 550.

After noting that "a violation of [37 C.F.R. § 1.56(b)] does not in itself support a defense of inequitable conduct," id., the court went on to assess the defendant's "proof that the patentee knew of the materiality of the information and that the patentee

17

intended to deceive or mislead the PTO." Id. (citing J.P. Stevens, 747 F.2d at 1559–60). Regarding the evidence of Boehringer's intent, the court had this to say:

> Boehringer's failure to disclose to the USPO anything about the '778 Patent litigation except its mere existence and the fact that some of the prior art came from that litigation, gives this Court great pause. The fact that Boehringer did not provide the USPO, in writing, with the name of the pending case, its docket number, the district in which it was pending and this Court's conclusions, establishes a threshold showing of intent to deceive and a lack of good faith. On this record, it firmly appears that Boehringer did not want the USPO to delve into the '778 litigation and learn of Schering's arguments and this Court's opinions. Boehringer's bare bones disclosure of the existence of the litigation and its utter failure to share the substance and status of that litigation with the USPO leads to a fair level of intent inferred against Boehringer. The materiality of the concurrent '778 Patent litigation which challenged both the validity and enforceability of the subject matter of the pending '563 Patent application is obvious. With such a strong showing of materiality, the level of intent needed in this case is substantially lowered.
>
> While Boehringer did disclose to the USPO the existence of the '778 litigation and the underlying prior art, compare with Critikon, 120 F.3d at 1256–1258 (strong inference of intent inferred when litigation and prior art were not disclosed), because Boehringer failed to disclose the arguments raised and the outcome of the preliminary injunction and summary judgment proceedings, an inference of deceptive intent on Boehringer's part sufficient to establish the substantial merit of Schering's defense may be inferred. Boehringer's failure to at least make a good faith attempt to apprise the USPO of the issues raised and conclusions drawn in the '778 Patent litigation informs this inference of intent. If Boehringer had made a good faith attempt by at least providing the USPO with a copy of the Court's opinions and a list of

>the parties['] submissions in the '778 litigation, such
>good faith disclosure would go a long way to rebut
>Schering's allegations of inequitable conduct and
>nefarious intent.  Rather, given the Boehringer's
>failure to apprise the USPO of any of the substance of
>the '778 litigation, it is faced now with a negative
>inference of intent drawn against it.

Id. at 551.


Here, Heidelberger made a substantially fuller disclosure of

the Mitsubishi litigation than Boehringer made of its litigation

with Schering concerning the '733 patent, which considerably

undermines MAN Roland's ability to demonstrate intent to mislead

the PTO.  Unlike Boehringer, Heidelberger did provide the name

and docket number of the Mitsubishi litigation as well as the

judicial district in which that litigation took place.  And while

Heidelberger did not disclose the district court's orders, it did

disclose the opinion from the Federal Circuit, which identified

the arguments made in the district court and the prior art the

district court relied on in reaching its decision.  Not only is

the evidence of intent much weaker in this case than in

Boehringer, but in addition, MAN Roland has dropped the ball on

materiality.  While the information from Mitsubishi that MAN

Roland claims to be material may, in fact, be material, it is MAN

Roland's burden to demonstrate how a particular piece of

undisclosed information is material to patentability, as materiality is defined in 37 C.F.R. § 1.56(b).  Given the thinness of MAN Roland's case (*i.e.*, its failure to explain how any particular piece of undisclosed information was material to patentability, and its weak evidence of intent to mislead the PTO), coupled with the Federal Circuit's advice to grant summary judgment on inequitable conduct with caution, the court simply cannot rule that MAN Roland is entitled to judgment as a matter of law on its claim that Heidelberger acted inequitably with regard to the <u>Mitsubishi</u> litigation.

### Conclusion

For the reasons given, MAN Roland's motion for summary judgment on Count 3 of its counterclaim (document no. 145) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 31, 2006

20

```
cc:  Daniel E. Will, Esq.
     Hugh T. Lee, Esq.
     Richard S. Gresalfi, Esq.
     Georg C. Reitboeck, Esq.
     Mark A. Hannemann, Esq.
     Michael J. Lennon, Esq.
     T. Cy Walker, Esq.
     Jonathan M. Shirley, Esq.
     Alfred H. Hemingway, Jr., Esq.
     Irvin D. Gordon, Esq.
     Martin B. Pavane, Esq.
     Michael J. Songer, Esq.
     Shari R. Lahlou, Esq.
     Sidney R. Bresnick, Esq.
     Teodor J. Holmberg, Esq.
     Richard D. Margiano, Esq.
     John F. Sweeney, Esq.
     Steven F. Meyer, Esq.
     Tony V. Pezzano, Esq.
     Bruce W. Felmly, Esq.
     Seth J. Atlas, Esq.
     Anthony S. Augeri, Esq.
```