UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Goss International Americas, Inc.,
    Plaintiff

    v.                                    Civil No. 03-cv-513-SM
                                        Opinion No. 2007 DNH 096
MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
    Defendants


MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
    Counterclaim Plaintiffs

    v.

Goss International Americas, Inc.
and Heidelberger Druckmaschinen AG,
    Counterclaim Defendants

**O R D E R**

On January 6, 2006, MAN Roland moved for summary judgment on its third counterclaim, seeking a declaratory judgment of unenforceability based upon a variety of alleged inequitable conduct (document no. 173). On July 31, 2006, the court denied MAN Roland's motion, finding that MAN Roland failed to provide clear and convincing evidence of inequitable conduct (document no. 418). Goss now moves for summary judgment that the '100, '734, and '251 patents-in-suit are not unenforceable for inequitable conduct (document no. 441), arguing that the alleged

inequitable conduct, even if true, is not relevant to the patents-in-suit.

## The Applicable Law

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." Atofina v. Great Lakes Chem. Corp., 441 F.3d 991, 1001 (Fed. Cir. 2006) (quoting Digital Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006)). Both of these elements, intent and materiality, must be proven by clear and convincing evidence. M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 439 F.3d 1335, 1340 (Fed. Cir. 2006) (citing J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d 1553, 1559 (Fed. Cir. 1984)).

The Federal Circuit has held that "a finding of inequitable conduct in the acquisition of even a single claim of a patent renders the remaining claims of that patent unenforceable, even those without the taint of inequitable conduct." Pharmacia Corp. v. Par Pharm., Inc., 417 F.3d 1369, 1374-75 (Fed. Cir. 2005) (citing Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 877 (Fed. Cir. 1988)). But, "the court's inequitable

conduct cases do not extend inequitable conduct in one patent to another patent that was not acquired through culpable conduct." Id.

**Discussion**

Goss asserts that even if it had engaged in inequitable conduct related to the revival of the '587 application, such conduct would be irrelevant to this case, because the prosecution chain that led to the '100, '734, and '251 patents is wholly separate from the revived '587 application.[1]

MAN Roland argues that the relevant inquiry is not whether the ancestry of the patents-in-suit can be traced back to the revival of the '587 application, but rather, whether any of the claims in the patents-in-suit protect the same subject matter at issue in the revived '587 application. The need to determine the

---

[1] MAN Roland asserts throughout its objection that Goss has conceded, albeit for the purposes of this motion only, that Goss (through its then subsidiary, Heidelberg Harris) engaged in inequitable conduct when it revived the '587 application. Goss, however, makes no such concession. Goss argues that the alleged misconduct, even if true, is not relevant to the enforceability of the patents. Goss's motion asserts, quite clearly, that MAN Roland's "allegations of bad-faith patent prosecution are wrong, but because the three patents-in-suit are enforceable in any event, MAN Roland's inequitable-conduct [sic] defense should be dismissed."

3

similarity of the subject matter, says MAN Roland, raises genuine disputes as to material facts which preclude summary judgment.

In an order dated March 3, 2007 (document no. 463) the court considered the same operative facts in the context of Heidelberger's motion for summary judgment on MAN Roland's antitrust cross-claim. Specifically, Heidelberger moved for summary judgment on MAN Roland's cross-claim asserting sham litigation on the basis that Heidelberger knew or should have known that the '100 and '734 patents were invalid and unenforceable because of inequitable conduct related to the '587 application revival. Heidelberger argued in that motion, just as Goss argues presently, that the patents-in-suit were unrelated to the revival '587 application. MAN Roland objected, but ignored the issue entirely, thereby conceding the point.[2] A review of the record also revealed that the '100 and '734 patents traced their ancestry back through continuations that predated the abandonment and subsequent revival of the '587 application.

---

[2] See L.R. 7.2(b)(2) ("All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party").

Regarding the present motion, MAN Roland brings forward no new evidence.  The record still reflects that the '100 and '734 patents, as well as the '251 patent that was not at issue in the court's March 12 order, trace their origins back through a chain of continuations that predate the abandonment of the original '587 application.  Specifically, all of the patents-in-suit can be traced back to the '668 application, a continuation of the original '587 application.  The '668 application was filed on May 14, 1991, but claims a priority date of October 5, 1989, based on the original filing date of the '587 application.  <u>See</u> 35 U.S.C. § 120 (articulating the conditions under which an inventor may claim the benefit of an earlier filing date).  The original '587 application was not abandoned until May 27, 1991, several days after the '668 application was filed.  The alleged inequitable conduct occurred in connection with the <u>revival</u> of the '587 application, which did not take place until June 24, 1992.

In its opposition, MAN Roland, citing <u>Fox Industries, Inc. v. Structural Preservation Systems, Inc.</u>, 922 F.2d 801, 804 (Fed. Cir. 1990), correctly notes that "[i]nequitable conduct occurring early in the prosecution of a chain of patent applications may render unenforceable all claims issuing from later-filed applications."  The record in this case, however, establishes two

separate and independent prosecution chains: one that derived from the original '587 application, and one that derived from the revived '587 application.  Although inequitable conduct in the revival of the '587 application might well taint the chain of applications that arose out of the revived '587 application,[3] it cannot be said that such inequitable conduct could have tainted the '668 application from which all of the relevant subsequent applications, including those that matured into the patents-in-suit, derived.

Simply put, the '668 application, from which the patents-in-suit ultimately derive, predates the alleged inequitable conduct.  Accordingly, the inequitable conduct could not have tainted the chain of applications that ultimately gave rise to the patents-in-suit.

### Conclusion

For the reasons given, the motion for summary judgment (document no. 441) is granted.

---

[3] Namely, the '152 application, filed on October 16, 1992, the '710 application filed on April 27, 1995, and the '581 application filed on January 5, 1996, none of which matured into an issued patent.

**SO ORDERED.**

*/s/ Steven J. McAuliffe*
_____
Steven J. McAuliffe
Chief Judge

August 14, 2007

cc:  Daniel E. Will, Esq.
     Hugh T. Lee, Esq.
     Richard S. Gresalfi, Esq.
     Georg C. Reitboeck, Esq.
     Mark A. Hannemann, Esq.
     Michael J. Lennon, Esq.
     T. Cy Walker, Esq.
     Jonathan M. Shirley, Esq.
     Alfred H. Hemingway, Jr., Esq.
     Irvin D. Gordon, Esq.
     Martin B. Pavane, Esq.
     Michael J. Songer, Esq.
     Shari R. Lahlou, Esq.
     Sidney R. Bresnick, Esq.
     Teodor J. Holmberg, Esq.
     Richard D. Margiano, Esq.
     Russell Beck, Esq.
     John F. Sweeney, Esq.
     Tony V. Pezzano, Esq.
     Bruce W. Felmly, Esq.
     Seth J. Atlas, Esq.
     Steven F. Meyer, Esq.
     Anthony S. Augeri, Esq.