```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Goss International Americas, Inc.,
     Plaintiff

     v.

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Defendants                         Civil No. 03-cv-513-SM
                                        Opinion No. 2008 DNH 062
MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Counter Plaintiffs

     v.

Goss International Americas, Inc.,
     Counter Defendant
```

**O R D E R**

MAN Roland moves for partial summary judgment, arguing that U.S. Patent Nos. 6,374,734, 6,386,100, and 6,739,251 ("the patents-in-suit") should be limited to an effective filing date of April 7, 1992, the filing date of Application No. 07/864,680 ("the '680 application"). The patents-in-suit currently claim priority to Application No. 07/417,587 ("the '587 application") which has an effective filing date of October 5, 1989. Goss objects. For the following reasons, MAN Roland's motion for partial summary judgment is granted.

**Background**

Goss filed the '587 application on October 5, 1989. The application is the first in a chain of applications leading to the patents-in-suit. It describes a lithographic printing press and a gapless tubular printing blanket as a component of that printing press. Goss then filed Application No. 07/699,668 ("the '668 application") on May 14, 1991, as a continuation-in-part of the '587 application and abandoned the '587 application. The '668 application describes a gapless and seamless tubular printing blanket and contains a disclosure completely different from the disclosure in the '587 application. Next, Goss filed Application No. 07/864,680 ("the '680 application") on April 7, 1992, as a continuation-in-part of the '668 application and abandoned the '668 application. The '680 application describes a lithographic printing press and a gapless tubular printing blanket. It uses the same disclosure as the patents-in-suit.

**Legal Standard for Summary Judgment**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c).  The "requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  Id.  A factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  Finally, all evidence and inferences therefrom must be viewed in the light most favorable to the nonmoving party.  Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

**Discussion**

According to MAN Roland, the patents-in-suit should be limited to an effective filing date of April 7, 1992, the filing date of the '680 application.  MAN Roland argues that the '668 application, which preceded the '680 application, does not disclose the same invention as the '680 application because the '668 application discloses a gapless and seamless printing blanket while the '680 application discloses a printing blanket that is gapless but not seamless.  If Man Roland is correct, then the '668 application broke the continuous chain of applications

necessary for the patents-in-suit to claim priority to the '668 application and its parent, the '587 application.

Goss objects, claiming that the '668 application describes tubular printing blankets generally and discloses a seamless variation as a preferred embodiment. With its objection, Goss includes a declaration from James Vrotacoe, an inventor listed on the '587, '668, and '680 applications and all three patents-in-suit. Vrotacoe states that a person of skill in the art would read the '668 application and understand it to describe tubular printing blankets generally without a seamless limitation.

"In order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." Zenon Envtl., Inc. v. U.S. Filter Corp., 506 F.3d 1370, 1378 (Fed. Cir. 2007) (quoting Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1571 (Fed. Cir. 1997)). Whether a prior application "complies with the written description requirement . . . is a question of fact." Lampi Corp. v. Am. Power Prod., Inc., 228 F.3d 1365, 1378 (Fed. Cir. 2000) (citing Vas-Cath Inc. v.

Mahurkar, 935 F.2d 1555, 1563 (Fed. Cir. 1991)).  To comply with the written description requirement, the prior application must describe an invention "in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought."  Lockwood, 107 F.3d at 1572 (citing Martin v. Mayer, 823 F.2d 500, 504 (Fed. Cir. 1987)).

While each application need not use the exact same terms, id. (citing Eiselstein v. Frank, 52 F.3d 1035, 1038 (Fed. Cir. 1995)), the prior application "must contain an equivalent description of the claimed subject matter.  A description which renders obvious the invention for which an earlier filing date is sought is not sufficient."  Id.  It is also not sufficient that the description, "when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose."  Id.  Therefore, in order to determine whether the patents-in-suit can claim priority to the '587 application, each claim of the patents-in-suit must be sufficiently described in the '668 application.

A.  The Claims of the Patents-in-Suit

The '100 and '251 patents each contain one independent claim directed to an offset lithographic printing press.  The independent claim from the '100 patent reads:

> An offset lithographic printing press comprising:
>
> a)   a first and second sidewall for carrying print cylinders;
>
> b)   a plate cylinder;
>
> c)   a printing plate;
>
> d)   a blanket cylinder engageable with the plate cylinder, the blanket cylinder having passages extending to an outer surface of the blanket cylinder;
>
> e)   a removable printing blanket mounted axially over the blanket cylinder, the printing blanket being tubular in shape and having an outer first circumferential surface;
>
> f)   a source of pressurized fluid coupled to the blanket cylinder, the source of fluid applying fluid to the blanket cylinder and through the plurality of passages to expand the removable printing blanket during installation and removal of the removable printing blanket;
>
> g)   one sidewall including a portion movable between a supporting position in axial alignment with the blanket cylinder and an open position spaced from the blanket cylinder to provide an opening in said sidewall to enable the printing blanket to be slideably removed from the outer surface of the blanket cylinder when the portion of the sidewall is in the open position;

      h)    the removable printing blanket further comprising an outer printing layer for transferring ink from the printing plate; a gapless rigid, cylindrical inner layer; and an intermediate, compressible layer.

'100 patent, col. 12, ll. 26-54.  The independent claim from the '251 patent reads:

> An offset lithographic printing press comprising:
>
> a)    a first and second sidewall;
>
> b)    a plate cylinder;
>
> c)    a printing plate adapted to be wrapped around the surface of the plate cylinder, the printing plate having opposite ends;
>
> d)    a blanket cylinder having passages extending to an outer surface of the blanket cylinder;
>
> e)    a removable printing blanket mounted axially over the blanket cylinder, the printing blanket being tubular in shape;
>
> f)    a source of pressurized fluid coupled to the blanket cylinder, the source of fluid applying fluid to the blanket cylinder and through the passages to expand the removable printing blanket during installation and removal of the removable printing blanket;
>
> g)    said first sidewall having a movable portion to provide an opening in the first sidewall to enable the printing blanket to be slideably removed from the blanket cylinder when the portion of said the first sidewall is in the open position; and
>
> h)    the removable printing blanket comprising a rigid cylindrical inner layer; an outer printing layer

>      for transferring an ink pattern to a web; and an
>      intermediate compressible layer between said inner
>      and outer layers; wherein the removable printing
>      blanket has an outer circumferential surface and
>      is radially expandable so as to enable the blanket
>      to be axially mounted onto the blanket cylinder of
>      the offset printing press.

'251 patent, col. 12, l. 39 – col. 13, l. 3.  The '734 patent,

however, is directed to a tubular printing blanket for use in an

offset printing press.  It has one independent claim that reads:

>      A tubular printing blanket for use on a blanket
> cylinder in an offset printing press comprising:
>
>      a rigid cylindrical inner layer;
>
>      an outer printing layer for transferring an ink
> pattern to a web; and
>
>      an intermediate compressible layer between said
> inner and outer layers, the tubular printing blanket
> being radially expandable so as to enable the blanket
> to be axially mounted onto the blanket cylinder of the
> offset printing press.

'734 patent, col. 12, ll. 28-38.


    MAN Roland argues that these three independent claims are

not supported by the '668 application because each lacks a

"seamless" limitation.  Thus, it is necessary to determine

whether the '668 application describes only seamless printing

blankets.  If only seamless printing blankets are supported, the

patents-in-suit cannot claim priority to the '668 application and must be limited to the '680 application's effective filing date.

B.  The '668 Application

The '668 application's "Summary of the Invention" section describes the invention as "a tubular printing blanket which enables a printing press to run at high speeds without excessive vibration or shock loads." (Defs.' Mot. Summ. J. (document no. 466), Ex. F, at 5.)  The printing blanket comprises a cylindrical sleeve with several layers wrapped around the sleeve.  Id.  The innermost "compressible layer comprises a first seamless tubular body of elastomeric material."  Id.  The middle "inextensible layer comprises a second seamless tubular body."  Id.  The outermost layer "comprises a seamless tubular printing layer having a continuous, gapless cylindrical printing surface."  Id.  The section further states that the printing blanket "advantageously has a seamless and gapless tubular form throughout its various layers."  Id.

Goss argues that a person of skill in the art would read the '668 patent to describe a tubular printing blanket generally.  To support its position, Goss offers three arguments supported by

the declaration of James Vrotacoe, an inventor of the patents-in-suit.  Specifically, Goss contends that: (1) original claims 30, 31, and 35 in the '668 application did not use the word "seamless" and were not rejected for lacking a "seamless" limitation; (2) several methods of manufacturing included in the '668 application tell of layers having a seam; and (3) MAN Roland's original supplier of blankets used with the Rotoman S, a competing printing press, used the word "seamless" to describe its blanket.

Goss's first argument is unpersuasive.  Goss argues that because claims 30, 31, and 35 did not use the word "seamless," the '688 application contemplated a printing blanket with a seam.  The three claims read:

> 30.  A blanket sleeve for an offset printing press comprises:
>
>     (a)  an elastic backing layer;
>
>     (b)  a compressible layer containing compressible thread, rubber cement and microspheres; and,
>
>     (c)  an outer print layer.
>
> 31.  A cylindrical blanket sleeve for an offset printing press comprises:

(a)  an elastic inner backing layer;

(b)  an intermediate compression layer comprising a lower portion consisting of at least one radial winding upon said backing layer of a compressible thread encapsulated in a rubber cement containing compressible microspheres, said radial winding of thread and cement and microspheres providing a continuous layer and an upper portion comprising at least one subsequent radial winding of a compressible thread in a rubber cement without any microspheres upon the first winding; and

(c)  an outer printing layer overlying the intermediate compressible layer and providing a continuous gapless outer circumference.


35.  A cylindrical blanket sleeve for use on an offset printing press having a printing blanket cylinder through which gas can be forced under pressure to expand and thereby facilitate the placement of a blanket sleeve on said blanket cylinder; said blanket sleeve comprising:

(a)  an elastic cylindrical, backing layer;

(b)  an intermediate compressible layer upon said backing layer, said compressible layer having an innermost portion comprising a first winding of compressible thread, compressible microspheres and a non-compressible rubber adhesive encompassing said thread and microspheres on said backing layer to provide a continuous layer and an outermost portion comprising a subsequent winding of compressible thread and non-compressible elastomeric material upon the first winding; and

(c)  an outer printing layer of continuous circumference, said printing layer being of an image receptive material.

(Defs.' Mot. Summ. J., Ex. F, at 32-34.)  The examiner rejected each claim under 35 U.S.C. § 112 because the "elastic backing layer" was not supported by the specification.  The examiner indicated that claims 31 and 35 would be allowed if rewritten to match the specification but did not mention any circumstances under which claim 30 would be allowed.

These claims do not support Goss's argument for two reasons.  First, only original claims that find sufficient support in the specification may be included as part of the original disclosure.  See In re Gardner, 480 F.2d 879, 879 (C.C.P.A. 1973).  In prosecution, Goss cancelled claims 30, 31, and 35 and added new claims 38 and 42 to replace claims 31 and 35 respectively.  Goss did not include a new claim to replace original claim 30.  While claim 30 was not rejected on account of a "seamless" limitation, the examiner's failure to provide a circumstance for allowance, and Goss's failure to further assert the claim's patentability, establish that claim 30 was not adequately supported by the specification.  Therefore, it can not be included as part of the original disclosure.

Second, as to original claims 31 and 35 and new claims 38 and 42, each contemplated an invention with a seamless intermediate compression layer created by radially winding a thread around a cylinder.  Figure 6 showed a seamless, uniform layer created by radially winding a thread around a cylinder.  The specification, describing Figure 6, explained that "thread 80 is drawn through the rubber cement in the container 120 as it is wound onto the backing layer 60 from a spool 122."  (Defs.' Mot. Summ. J., Ex. F, at 18-19.)  Although the claims do not use the word "seamless," the specification and Figure 6 show that radially winding a thread around a tube creates a layer without a seam.  Since the claims in the patents-in-suit do not require a printing blanket with a seamless intermediate compression layer, claims 31 and 35 cannot provide sufficient support for claiming priority.  The original disclosure must "describe the invention, with all its claimed limitations, not that which makes it obvious."  Lockwood, 107 F.3d at 1572.

In sum, because claim 30 cannot be part of the original disclosure and claims 31 and 35 required a seamless embodiment, Goss's first argument fails to defeat MAN Roland's motion for partial summary judgment.

Goss's second argument is also unpersuasive. In the declaration filed with Goss's objection, James Vrotacoe claims that a person reasonably skilled in the relevant art would understand the '668 application to describe printing blankets generally. Vrotacoe asserts that neither the description nor figures "suggest that a seamless construction is required." (Pl.'s Obj. (document no. 476), Vrotacoe Decl., ¶ 5.) He also asserts that the blankets described in the '668 application include blankets manufactured by "wrapping a flat sheet of material around a sleeve and adhering it to the sleeve." Id. Neither of these assertions creates a genuine issue of material fact sufficient to defeat MAN Roland's motion for partial summary judgment.

While certain parts of the specification describe a manufacturing process wherein a particular layer has a seam, the end result of each process is a printing blanket with a continuous, seamless outer printing layer. In its objection, Goss cites three specific instances that each result respectively in "no axially extending seam," a "continuous seamless tubular body," and a "smooth, continuous cylindrical contour." (Defs.' Mot. Summ. J., Ex. F, at 19-20, 24.) The first two embodiments,

14

while having a seamed layer at some point in the manufacturing process, result in a finished product with no seam.  Thus, the first two embodiments do not support Vrotacoe's assertion that the '668 application includes seamed printing blankets.

The third embodiment, however, describes a printing blanket with a thin film of plastic that is spirally wound through the inextensible and compressible layers.  While this embodiment discloses a seam in the two inner layers, it appears that Goss disclaimed any rights to embodiments with a seam.  In the August 17, 1992, office action, the examiner stated that Goss's printing blanket was obvious because prior art taught of a method of manufacturing tubular printing blankets by wrapping a flat blanket around a tube.  In response, Goss contended that

> the Ross patent expressly teaches that a flat sheet is formed into a cylindrical printing blanket by butting the opposite ends of the sheet together to define a splice, which is a seam.  The prior art thus does not suggest the present invention and, if anything, teaches away from the present invention.

(Defs.' Reply (document no. 483), Ex. BB, at 7-8.)  Additionally, Goss asserted that "[n]o prior art reference discloses a cylindrical compressible layer that is gapless and seamless." Id. at 7.  Because Goss disclaimed embodiments with a seam,

Vrotacoe's assertion that the '668 application includes blankets constructed by wrapping a flat sheet around a sleeve fails to create a genuine issue of material fact.

In sum, none of the embodiments in the '668 application, specifically those cited by Goss, create a genuine issue of material fact sufficient to defeat MAN Roland's partial motion for summary judgment.  No reasonable fact-finder could understand the '668 application as describing both seamed and seamless printing blankets.  Additionally, the '668 application's written description, figures, and prosecution history seem to undermine Vrotacoe's assertions.

Goss's final argument is similarly unpersuasive.  Goss, in essence, argues for a new definition of "seamless" that is not supported by the '668 application or its prosecution history.  The application does not specifically define "seamless," but in response to a rejection, Goss defined "seamless" to mean without "a splice, which is a seam."  (Defs.' Reply, Ex. BB, at 8.)  The blanket used with the Rotoman S, as cited by Goss, does not use the same definition of "seamless."  Instead, "seamless" in the Rotoman S context is the same as Goss's definition of "gapless."

16

In a previous order, the court construed a "gapless printing blanket" to mean a printing blanket "installed without the use of a blanket cylinder gap." (Document no. 403, at 12). The Rotoman S blanket is described as "seamless in that it could be mounted around a cylinder without any surface interruptions, in the manner of a sleeve." (Pl.'s Obj. at 3.) "Gapless" for Goss's blanket is "seamless" for the Rotoman S blanket. In sum, Goss's argument for an alternate definition of "seamless" fails to defeat MAN Roland's motion for partial summary judgment.

C. Goss's Legal Argument

In a final attempt to defeat MAN Roland's partial summary judgment motion, Goss directs the court's attention to <u>Lampi Corp. v. Am. Power Prod., Inc.</u>, 228 F.3d 1365 (Fed. Cir. 2000). In <u>Lampi</u>, the court held that the '227 patent, the patent-in-suit, was supported by a prior application that issued as the '875 patent. The '227 patent claimed a florescent lamp with two half-shells which encompassed a florescent element. The '875 patent, however, claimed a florescent lamp with two <u>identical</u> half-shells. The defendant argued that the '227 patent was not supported by the '875 patent because the specification described identical half-shells and only identical half-shells were

17

claimed. The court disagreed. While the '875 patent claimed a lamp with identical half-shells, the specification described embodiments with both identical and non-identical half-shells. Therefore, the '227 patent could not be limited to the claims of the '875 patent or its preferred embodiments.

The "seamless" limitation in the '668 application is significantly different from the "identical" limitation in Lampi's '875 patent. The '875 patent only describes identical half-shells as a preferred embodiment. The '668 application, in contrast, not only describes a seamless printing blanket in each preferred embodiment but also in the Summary of the Invention.

While a description in the Summary of the Invention is not dispositive as to a limitation, "[s]tatements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition." C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 864 (Fed. Cir. 2004). Limiting language "must be read in context of the entire specification and the prosecution history." Rambus, Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1094 (Fed. Cir. 2003). The '668 application and its prosecution history

18

require a seamless printing blanket.  The Summary of the Invention describes the printing blanket generally as seamless, the claims are limited to seamless embodiments, and the prosecution history indicates that Goss disclaimed seamed embodiments.  Thus, only seamless printing blankets are supported by the '668 application and the patents-in-suit, which do not require such a limitation, cannot claim priority.

## Conclusion

Because there is no genuine issue of material fact, MAN Roland's motion for partial summary judgment is granted.  The patents-in-suit are limited to a date of priority of April 7, 1992, the effective filing date of the '680 application.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 28, 2008

cc:  John F. Sweeney
     Tony V. Pezzano
     Seth J. Atlas, Esq.
     Russell Beck, Esq.
     Sidney R. Bresnick, Esq.
     Bruce W. Felmly, Esq.
     Irvin D. Gordon, Esq.

Richard S. Gresalfi, Esq.
Mark A. Hannemann, Esq.
Alfred H. Hemingway, Jr., Esq.
Teodor J. Holmberg, Esq.
Shari R. Lahlou, Esq.
Hugh T. Lee, Esq.
Michael J. Lennon, Esq.
Richard D. Margiano, Esq.
Steven F. Meyer, Esq.
Martin B. Pavane, Esq.
Georg C. Reitboeck, Esq.
Jonathan M. Shirley, Esq.
Michael J. Songer, Esq.
T. Cy Walker, Esq.
Daniel E. Will, Esq.