UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Goss International Americas, Inc.,
     Plaintiff

     v.

MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Defendants                          Civil No.03-cv-513-SM
                                         Opinion No. 2008 DNH 061
MAN Roland, Inc. and
MAN Roland Druckmaschinen AG,
     Counterclaim Plaintiffs

     v.

Goss International Americas, Inc.,
     Counterclaim Defendant

## O R D E R

In document no. 464, counterclaim defendant Heidelberger Druckmaschinen AG ("Heidelberger") moves for reimbursement of its reasonable attorneys' fees pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure. MAN Roland, Inc. and MAN Roland Druckmaschinen AG (collectively "MAN Roland"), the counterclaim plaintiffs, object. For the reasons given, Heidelberger's motion for attorneys' fees is denied.

**Discussion**

A motion for attorneys' fees must "specify the . . . statute, rule, or other grounds entitling the movant to the award." FED. R. CIV. P. 54(d)(2)(B)(ii).  Here, Heidelberger bases its request on 35 U.S.C. § 285, 28 U.S.C. § 1927, and the court's inherent power to impose sanctions for bad-faith and vexatious litigation.  The court considers each theory in turn.

A.  35 U.S.C. § 285

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.

> The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process in which the district court must (1) determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, then determine in its discretion whether an award of attorney fees is justified, a determination that we review for an abuse of discretion. Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc).

Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1366-67 (Fed. Cir. 2007).

Heidelberger argues that as to MAN Roland's counterclaims, it is a prevailing party and that this is an exceptional case,

2

given MAN Roland's alleged bad-faith assertion of frivolous claims, conduct which amounted to vexatious litigation.  MAN Roland counters that: (1) Heidelberger has not yet fully prevailed on the sham litigation claim because it (MAN Roland) could yet prevail on its claim that the patents-in-suit are invalid due to obviousness, making litigation to enforce them sham litigation, thus subjecting Heidelberger to liability, if not directly, then vicariously, under an alter-ego theory; and (2) as a matter of law, section 285 pertains only to patent claims and, therefore, is inapplicable to the counterclaims it asserted in this case, which are based upon federal antitrust law and state common law, and a New Hampshire statute.

"Section 285 is implicitly limited to patent cases."  7 DONALD S. CHISUM, CHISUM ON PATENTS § 20.03[4][c][vi], at 20-508 (2005).  Goss v. MAN Roland is a patent case.  But, none of the counterclaims asserted against Heidelberger by MAN Roland were brought under the Patent Act.  Rather, they include two Sherman Act claims (Counts 4 and 5), one Clayton Act claim (Count 6), four common-law claims (Counts 7, 8, 10, and 11), and a claim under New Hampshire's Consumer Protection Act (Count 9).  As Professor Chisum has pointed out:

> The plaintiff in a patent infringement action may join with it other types of claims, state or federal, such as trade secret liability or unfair competition. In Monolith Portland Midwest Co., the Ninth Circuit held that "If an action combines patent and nonpatent claims, no award of fees pursuant to section 285 can be allowed for litigating the nonpatent issues."

CHISUM, supra, at 20-513 (citing Monolith Portland Midwest Co. v. Kaiser Alum. & Chem. Corp., 407 F.2d 288, 297 (9th Cir. 1969)); see also Stickle v. Heublein, Inc., 716 F.2d 1550, 1564 (Fed. Cir. 1983) (citing Monolith, 407 F.2d at 299) (vacating award of attorneys' fees under section 285 to the extent that award reimbursed plaintiff for successful prosecution of breach of warranty claim brought in conjunction with patent infringement claim); Petersen Mfg. Co. v. Cent. Purchasing, Inc., 740 F.2d 1541, 1551 (Fed. Cir. 1984) (vacating award of attorneys' fees under section 285 to the extent that award reimbursed defendant for successful defense of unfair competition claim brought in conjunction with patent claim).

Petersen might seem to close the door on Heidelberger's request for attorneys' fees because, although Heidelberger prevailed against MAN Roland, it was not called upon to defend against any claims under the Patent Act. But, the concept of "patent claims," for purposes of section 285, extends somewhat beyond strict patent infringement claims or requests for

4

declaratory judgment of non-infringement.  As the Federal Circuit has explained:

> Attorney fees under section 285 may be awarded for time incurred in the litigation of legitimate patent claims.  See Machinery Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 475 (Fed. Cir. 1985).  A claim arises under the patent laws if the right to relief "will be defeated by one construction, or sustained by the opposite construction of [the patent] laws." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 807-08 (1988) (citation omitted).  Thus, in deciding the applicability of § 285 fees, we look to the rights at issue and whether they properly invoke the patent laws.  See Chemical Eng'g Corp. v. Marlo, Inc., 754 F.2d 331, 333-34 (Fed. Cir. 1984).  It matters not whether those rights arise in a patent suit or in an action to enforce an agreement settling that litigation.

Interspiro USA, Inc. v. Figgie Int'l Inc., 18 F.3d 927, 933 (Fed. Cir. 1994) (parallel citations omitted).  In Interspiro, the Federal Circuit held that it was appropriate to award attorneys' fees under section 285 in what was, substantially, a breach of contract action, because the contract the defendant breached was an agreement settling a patent infringement case, and resolution of the breach of contract action "turn[ed] on whether the E-Z Flo [a device manufactured by the defendant] infringe[d] the '145 patent, a matter unquestionably governed by patent law."  18 F.3d at 933.

And in <u>Beckman Instruments, Inc. v. LKB Produckter AB</u>, the Federal Circuit affirmed the trial court's determination that the case before it was exceptional, for purposes of section 285, based upon the defendant's repeated violation of a permanent injunction and its vexatious litigation strategy which included, among other things, bringing and then dropping an antitrust counterclaim. 892 F.2d 1547, 1551-52 (Fed. Cir. 1989). In support of that ruling, the court explained:

> LKB also contends that it was improper for the district court to consider a non-patent claim, namely the antitrust counterclaim, in a recovery under 35 U.S.C. § 285. However, in an action having both patent and non-patent claims, recovery may be had under § 285 for the non-patent claims if the issues involved therewith are intertwined with the patent issues. <u>See</u> <u>Stickle v. Heublein</u>, 716 F.2d at 1564. Since LKB's antitrust claim was based on alleged inequitable conduct in the PTO, this is certainly the case in the present litigation.

<u>Beckman</u>, 892 F.2d at 1552 n.2 (parallel citation omitted). Given that MAN Roland's antitrust claims were based on alleged inequitable conduct in the PTO, and subsequent litigation brought to enforce patents that were allegedly invalid or unenforceable, and given the court's previous determination that the state law claims in Counts 7-11 are all based upon the same conduct alleged in Count 5 (<u>see</u> document no. 410, at 2), the court has little difficulty concluding that MAN Roland's counterclaims are

6

sufficiently "intertwined" with the patent claims in this case that Heidelberger's request for section 285 attorneys' fees may not be rejected on grounds that it did not incur those fees defending against a patent claim.

MAN Roland's second argument, that Heidelberger is not a prevailing party, is similarly unavailing. MAN Roland asserts that Heidelberger's motion for attorneys' fees is premature because the court has not yet ruled on the portion of its counterclaim that alleges Heidelberger engaged in sham litigation.[1] Specifically, MAN Roland asserts that the court's prior dispositional orders only pertained to its counterclaim to the extent MAN Roland alleged sham litigation on the basis of <u>Walker Process</u> fraud and inequitable conduct. What remains, says MAN Roland, is a sham litigation claim based on an allegation that the patents-in-suit are invalid for obviousness, and that Heidelberger knew or should have known that the patents were invalid for obviousness when it brought suit. A review of the record reveals that MAN Roland's assertions are without merit.

---

[1] More accurately, MAN Roland asserts that Heidelberger's subsidiary, Heidelberg Web Systems, Inc. ("HWS") engaged in sham litigation against MAN Roland, and that Heidelberger is liable to MAN Roland as HWS's alter ego. Because the court can resolve the underlying issues regarding the claim, the precise party against whom the claim is brought is of no moment.

In its amended answer, affirmative defenses, and counterclaims (document no. 23), in the context of Count 7 (a claim for violation of the common law of abuse of process), MAN Roland alleged that Heidelberger's

> use of the PTO and judicial processes is improper because Counterclaim-Defendants know the patents in suit are invalid and/or unenforceable, thus the use of such processes is baseless.

(Am. Answer ¶ 119.)  More specifically, and in the context of the sham litigation claim asserted in Count 5, MAN Roland alleged that Heidelberger

> knew and/or should have known that the patents in issue were invalid and/or unenforceable in view of prior art, failures to comply with the requirements of 35 U.S.C. § 112, double patenting, and inequitable conduct, and were not infringed by [MAN Roland].

(Id. ¶ 93.)  MAN Roland described, with specificity, the bases upon which it asserted that Heidelberger knew or should have known that the patents it sought to enforce were invalid.  Absent from that list, however, is any allegation that Heidelberger knew or should have known that the patents were obvious.

In prior rulings, the court noted the limited scope of the sham litigation counterclaim and MAN Roland's apparent lack of interest in litigating it.  In its June 2, 2006, order (document

no. 410), the court noted that MAN Roland "may be letting its sham litigation claim fade away," and that the claim was "hanging by the proverbial thread." The court declined to grant summary judgment at the time, however, because Heidelberger's argument consisted of one unpersuasive paragraph, and because the record remained substantially undeveloped.

In a subsequent order, dated March 12, 2007 (document no. 463), the court observed that although sham litigation claims may be based on any objectively baseless action, in this case "MAN Roland has limited its sham litigation claim to allegations of inequitable conduct in the prosecution of the '587 patent, a premise to which MAN Roland does not object." The court further noted that its grant of summary judgment on MAN Roland's sham litigation claim "resolves all claims against Heidelberger."

Despite those clear statements, and the court's conclusion that Heidelberger was no longer a party, MAN Roland never sought to correct the record or more clearly articulate some basis for its sham litigation claim, nor did it move the court to reconsider its ruling.[2] Indeed, MAN Roland's litigation posture

---

[2] MAN Roland did move to reconsider the June 2, 2006, order, but its arguments were unrelated to the sham litigation claim.

suggests that its renewed interest in pursuing the already-resolved sham litigation claim is a function of its failure to prevail on the claims asserted against Heidelberger. The difficulty MAN Roland faces is that it is too late. It did not oppose summary judgment on the grounds of "obviousness as sham litigation" and summary judgment was granted to Heidelberger. It cannot prevail against Heidelberger at this point under any theory.

Parenthetically, the court has been unable to identify, and MAN Roland has failed to provide, any legal support for the proposition that obviousness can provide a basis upon which to assert a sham litigation claim in a case where a patent issued. To prevail on a claim for sham litigation, the antitrust plaintiff must prove, inter alia, that the challenged lawsuit is objectively baseless. See Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993) (quoting E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961)) (emphasis added in PRE). A patent infringement suit is objectively baseless when the infringement plaintiff knows either that the patent is invalid or is not infringed. See C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1368 (Fed. Cir. 1998). Thus, to prevail on such a claim, MAN

Roland would need to show that Heidelberger knew, at the time it attempted to enforce the patents in suit, that they were invalid because the subject matter claimed in the patents was obvious.

The record reveals, however, that, to the contrary, Heidelberger had reason to believe the patents in suit were not obvious, if for no other reason than that the patents were issued in the first instance.  See Structural Rubber Prods. Co. v. Park Rubber Co., 749 F.2d 707, 714 (Fed. Cir. 1984) (explaining that the statutory presumption of patent validity carries with it, inter alia, a presumption of nonobviousness); see also 35 U.S.C. § 103.  Heidelberger's reliance on the statutory presumption of validity might be undermined if it were shown that Heidelberger improperly obtained the patents in suit, but such facts would more properly support a sham litigation claim based on Walker Process fraud or inequitable conduct.  Both theories of sham litigation have been raised in this case, and both were previously resolved in Heidelberger's favor.

Because Heidelberger is a prevailing plaintiff, and MAN Roland's counterclaims did, for purposes of awarding attorneys' fees under section 285, arise under the patent laws, the court turns to the merits of Heidelberger's request.

Heidelberger argues that this is an exceptional case because: (1) MAN Roland's counterclaims were baseless; (2) MAN Roland attempted to bring additional categories of fraudulent conduct into the case that were not alleged in its counterclaim; (3) MAN Roland abandoned several other grounds of alleged fraudulent conduct that were pleaded in its counterclaim; and (4) MAN Roland filed a motion for summary judgment on the same inequitable conduct grounds that were rejected in the order granting partial summary judgment to Heidelberger on the motion for summary judgment it presented in document no. 140.[3]  For its part, MAN Roland argues only that, as a matter of law, section 285 attorneys' fees are not available to prevailing antitrust defendants.  That is, MAN Roland offers little with respect to whether this is an "exceptional case" warranting an award of fees.

At the outset, the court notes that the decisional law provides little direct guidance with respect to determining whether this is an exceptional case.  Professor Chisum discusses

---

[3] MAN Roland did not submit that summary judgment motion after the court had granted summary judgment to Heidelberger on the issues contained therein; the summary judgment motions were, for all practical purposes, simultaneous.  Thus, filing that motion does not lend support to an argument that MAN Roland continued the litigation in bad faith.

awards to prevailing patent owners, noting that "'exceptional cases' are usually those of willful or deliberate infringement by the infringer or bad faith continuation of the litigation." 7 CHISUM, supra, § 20.03[4][c][ii]. On the other hand, "[i]n the case of awards to prevailing accused infringers, 'exceptional cases' are usually those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent from the Patent and Trademark Office." Id. § 20.03[4][c][iii]. Heidelberger, of course, is neither a prevailing patent owner nor a prevailing accused infringer. Moreover, neither Heidelberger nor the court has found any decision in which a prevailing counterclaim defendant in a patent case has been awarded fees under section 285.[4]

One might argue that Heidelberger could be understood to occupy the same position as a patent holder preemptively sued by a potential infringer for a determination of patent invalidity – making Heidelberger analogous to a prevailing patent owner, who typically would be entitled to fees, if at all, from a willful

---

[4] In PPG Industries, Inc. v. Celanese Polymer Specialties Co., however, the trial court declined to grant section 285 attorneys' fees to a prevailing antitrust counterclaimant in a patent case, reasoning that 15 U.S.C. § 15 allows attorneys' fees for prevailing antitrust claimants. 658 F. Supp. 555, 559 (W.D. Ky. 1987), rev'd on other grounds, 840 F.3d 1565 (Fed. Cir. 1988)).

13

infringer or an infringer who continued litigation in bad faith. But a better approach would be to deem this an exceptional case if, when MAN Roland brought the counterclaims, it knew or should have known that: (1) the patents-in-suit were valid and enforceable (*i.e.*, not procured as a result of fraud on the patent office); or (2) that Heidelberger played no role in seeking to enforce the patents-in-suit.

MAN Roland's counterclaims, while ultimately unsuccessful, were not baseless.  They rested upon two general categories of alleged inequitable conduct before the PTO – failure to disclose pertinent information, and improper disclosure of other information.  Each of those claims had a factual basis.  And, with regard to the claims concerning failure to disclose certain materials, disposition turned not on MAN Roland's failure to produce evidence that Heidelberger did not disclose the items in question — a fact Heidelberger conceded in several instances. Rather, Heidelberger prevailed only after the court proceeded to the issue of the materiality of those items.  So, while Heidelberger prevailed, the claims themselves were not without a factual or legal foundation.  So, they were neither baseless nor frivolous.  Second, as noted in the order denying the motion for summary judgment presented in document no. 139, there is at least

some evidence suggesting that Goss's predecessor in interest, HWS, might have been an alter ego of Heidelberger, such that Heidelberger might have been held liable for HWS's pre-litigation attempts to enforce the patents-in-suit.  (Document no. 410, at 5).

In sum, the court finds that this is not an exceptional case, as that term is used in section 285.  Certainly, the case is complicated, and has been vigorously litigated by all parties down to the last detail, and no doubt at great expense.  But, then again, the stakes appear to be comparatively high for all concerned.  Because Heidelberger has not established by clear and convincing evidence that this is an exceptional case, its motion for attorneys' fees under 35 U.S.C. § 285 is denied.

B.  28 U.S.C. § 1927

Heidelberger has also moved for attorneys' fees under 28 U.S.C. § 1927.  That statute provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Heidelberger's memorandum of law includes no separate discussion of its claim to entitlement to attorneys' fees under section 1927. MAN Roland, in turn, argues that the conduct attributed to it by Heidelberger does not rise to the level of the conduct in <u>Books Are Fun, Ltd. v. Rosebrough</u>, 239 F.R.D. 532 (S.D. Iowa 2007), a case in which the court declined to impose sanctions under section 1927.

The proceedings in this case have been extensive, the pleadings and exhibits voluminous (somehow, even that word seems not up to the task), the issues raised complex, and the argument sophisticated and energetic. But all parties have contributed fully to those circumstances. Counsel to MAN Roland have proven no less civil, professional, or capable than any other counsel. Accordingly, the request for sanctions against MAN Roland in the form of attorneys' fees under section 1927 is denied. <u>Cf.</u> <u>Sony Elecs., Inc. v. Soundview Techs., Inc.</u>, 389 F. Supp. 2d 443, 447 (D. Conn. 2005) (granting attorneys' fees under section 1927 against party that "persisted in its claim of a viable antitrust theory even after the Court granted summary judgment to [other similarly situated] parties on non-infringement, at which point it should have been obvious that its antitrust claim was frivolous").

16

C.  The Court's Inherent Authority

Finally, Heidelberger asks the court to exercise its inherent authority to award attorneys' fees.  For all the reasons given above, the court declines to do so.

### Conclusion

For the reasons given, Heidelberger's motion for attorneys' fees (document no. 464) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 28, 2008

cc:   John F. Sweeney
      Tony V. Pezzano
      Seth J. Atlas, Esq.
      Russell Beck, Esq.
      Sidney R. Bresnick, Esq.
      Bruce W. Felmly, Esq.
      Irvin D. Gordon, Esq.
      Richard S. Gresalfi, Esq.
      Mark A. Hannemann, Esq.
      Alfred H. Hemingway, Jr., Esq.
      Teodor J. Holmberg, Esq.
      Shari R. Lahlou, Esq.
      Hugh T. Lee, Esq.
      Michael J. Lennon, Esq.
      Richard D. Margiano, Esq.
      Steven F. Meyer, Esq.
      Martin B. Pavane, Esq.
      Georg C. Reitboeck, Esq.
      Jonathan M. Shirley, Esq.

```
Michael J. Songer, Esq.
T. Cy Walker, Esq.
Daniel E. Will, Esq.
```